FILED
JUN 2 6 2007
JUN 26, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) Plaintiff ) vs. ) ) LAKE SHORE ASSET MANAGEMENT ) LIMITED; ) ) Defendant. ) | **07CV3598**<br>**JUDGE MANNING**<br>**MAG. JUDGE MASON** |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

### I. SUMMARY

1. Since June 21, 2007 and continuing through the present ("relevant time"), the Defendant, Lake Shore Asset Management Limited ("LAM"), which was acting as a commodity pool operator ("CPO") and a commodity trading advisor ("CTA") and was registered in those capacities with plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC"), has refused to make its books and records available for inspection and has been unable or unwilling to provide information about its pool participants and trading performance.

2. LAM thus has engaged, is engaging or is about to engage in acts and practices in violation of Section 4n Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. § 6n (2002), and Commission Regulations ("Regulations") 1.31, 4.23, and 4.33, 17 C.F.R. §§ 1.31, 4.23, and 4.33 (2007).

ORIGINAL

3. Unless restrained and enjoined by this Court, the Defendant is likely to continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices, as more fully described below.

4. Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2002), the Commission brings this action to enjoin Defendant's unlawful acts and practices, and compel Defendant's compliance with the provisions of the Act and Regulations thereunder.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper District Court of the United States against such person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

6. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), because the Defendant has an office in this District and the acts and practices in violation of the Act have occurred within this District.

### III. THE PARTIES

7. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with administering and enforcing the Act, 7 U.S.C. §§ 1 et seq. (2002), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2007).

8. Defendant **Lake Shore Asset Management Limited** is located at 875 N. Michigan Ave., Suite 1562, Chicago, Illinois 60611-7449. In various documents and on its website it purports to be a Bermuda corporation domiciled in the British Virgin Islands. LAM has been registered with the Commission as a CPO and a CTA since January 2007. LAM is also a member of the National Futures Association ("NFA").

#### A. Statutory And Regulatory Background

9. Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2002), defines a CPO as any person engaged in the business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

10. Section 1a(6) of the Act, 7 U.S.C. § 1a(6) (2002), defines a CTA as any person who for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in (I) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction

3

execution facility; (II) any commodity option authorized under section 4c; or (III) any leverage transaction authorized under section 19; or for compensation or profit, and as part of a regular business, issues or promulgates analysis or reports concerning any of the activities referred to above.

11. Section 4n of the Act, 7 U.S.C. § 6n (2002) requires CTAs and CPOs to maintain certain books and records in such form and manner as may be prescribed by the Commission, and, upon request by the Commission, shall make available for inspection such books and records.

12. Regulation 1.31, 17 C.F.R. § 1.31(a)(1) (2007), provides, in relevant part, that all books and records required to be kept by the Act and Regulations shall be readily accessible and open to inspection by any representative of the Commission or the United States Department of Justice.

13. Regulation 4.23, 17 C.F.R. § 4.23 (2007), provides, in relevant part, that all registered CPOs must make, keep and produce upon Commission request certain books and records including, but not limited to, literature distributed to existing or prospective participants and itemized records of commodity interest transactions.

14. Regulation 4.33, 17 C.F.R. § 4.33 (2007), provides, in relevant part, that all registered CTAs must make, keep and produce upon Commission request certain books and records including, but not limited to, the name and address of each client and subscriber, literature distributed to existing or prospective clients, and itemized records of each commodity interest transaction of the CTA.

15. The NFA is a not-for-profit membership corporation and is a self-regulatory organization that is registered with the Commission as a futures association

4

under Section 17 of the Act. The NFA conducts audits and investigations of NFA member firms, including registered CTAs and CPOs, to monitor for compliance with NFA rules, some of which incorporate by reference Commission Regulations.

## IV.  FACTS

16.  Between at least January 17, 2007 and up to the present, LAM has been registered with the Commission, as a CPO and a CTA, pursuant to Section 4m of the Act, 7 U.S.C. § 6m (2002). LAM is also a member of the NFA.

17.  Among other things, Defendant operates and advises collective investment vehicles that trade in, among other things, commodity futures contracts traded on United States futures exchanges. LAM has at least ten United States customers.

18.  Between at least June 11, 2007 and up to the present, the NFA conducted a review of LAM's website at www.lakeshorefunds.com. The website, among other things: promotes pools called Lake Shore Funds I, II, III, and IV; touts a highly profitable 13-year performance record; represents that LAM is regulated by the CFTC and NFA; and includes a link to NFA's website.

19.  On June 14, 2007, NFA also conducted a review of LAM's operations and, as part of that review, asked LAM's principal, Laurence M. Rosenberg ("Rosenberg"), to produce books and records by noon June 19, 2007.

20.  On June 14, 2007, Rosenberg represented that: LAM operates several commodity pools; LAM had no United States participants; LAM's "LS Fund IV U.S." presently has $70 million invested in it; in addition to the pools, LAM managed approximately 250 accounts; and the total assets of the pools and managed accounts were approximately $1 billion.

21. On June 14, 2007, LAM confirmed to the NFA that LAM operated several commodity pools, that none of the pools have participants who are United States citizens or who are domiciled in the United States, and that LAM's recently formed "LS Fund IV U.S." is intended for United States investors. Rosenberg also represented that the pools have trading accounts with Man Financial London, Lehman Brothers London and Fimat London.

22. Later that same day, Rosenberg changed the earlier representation that none of the commodity pools had any United States investors and represented that "LS Fund IV U.S." had one United States investor who had invested $1 million.

23. When the NFA asked Rosenberg why LAM's NFA registration records indicate that LAM's main office is in Bermuda, Rosenberg told them that no business is conducted in Bermuda. While there is an office in Bermuda with an attorney acting as an agent, all calls to Bermuda are forwarded to LAM's office in Toronto, Canada. Rosenberg also said that the Toronto office is where all trading is done and all books and records are maintained.

24. On June 15, 2007, Rosenberg provided the NFA with access to LAM's protected web pages and the NFA learned that assets for all commodity pools and managed accounts totaled $466,710,761, dramatically less than Rosenberg's estimate that LAM had approximately $1 billion under management. It also appeared that LAM had at least 10 United States customers.

25. On June 19, 2007, Rosenberg revoked NFA's access to LAM's protected website and told NFA that upon the advice of counsel, located in Geneva, Switzerland, LAM would not provide any additional information because of concerns related to "bank

secrecy" laws. NFA reminded Rosenberg that LAM had agreed to make its books and records available to NFA within 72 hours and had certified in its registration application that it was not subject to any blocking privacy or secrecy laws that created an obstacle to full record production. Later that same day, Rosenberg denied having any ownership interest in LAM and claimed he could not authorize the release of any information.

26. In part because LAM refused to provide the documents to NFA, on June 21, 2007, the Commission issued a document request to LAM, pursuant to Section 4n of the Act, requesting, among other things, that LAM produce books and records including records that would reflect the actual performance of the commodity pools, and produce a list with the name and address of each client, or participant, and submit samples or copies of all reports, memorandums, publications or other literature or advice distributed to clients or participants.

27. On June 21, 2007, Rosenberg told Commission staff that there were no books and records in the Chicago office and that all books and records were located in Toronto and were not available for inspection.

28. Commission staff later learned that the address for the Toronto office provided by LAM in registration materials was a "mail drop." Commission staff also learned that the individual whose name appeared on registration materials as LAM's compliance officer claimed to be an "IT" consultant under contract with LAM.

29. LAM failed to produce the requested records in violation of the Act and Regulations.

30. Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), to enjoin Defendant's unlawful acts and practices and

to compel their compliance with the Act and Regulations. In addition, the CFTC seeks civil monetary penalties and such other equitable relief as this Court may deem necessary or appropriate.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION'S REGULATIONS

**VIOLATIONS OF SECTIONS 4n OF THE ACT AND REGULATIONS 1.31, 4.23, AND 4.33: BOOKS AND RECORDS**

31. The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated by reference.

32. Section 4n of the Act and Regulation 1.31 require that every CPO and CTA maintain books and records in such form and manner as may be prescribed by the Commission. All such books and records shall be kept for a period of five years and shall be readily accessible during the first two years. All such books and records shall be open to inspection by any representative of the Commission or the Department of Justice.

33. Regulation 4.23 provides, in relevant part, that all registered CPOs must make, keep and produce upon Commission request certain books and records including, but not limited to, literature distributed to existing or prospective participants and itemized records of commodity interest transactions. Regulation 4.33 provides, in relevant part, that all registered CTAs must make, keep and produce upon Commission request certain books and records including, but not limited to, the name and address of each client and subscriber, literature distributed to existing or prospective clients, and itemized records of each commodity interest transaction of the CTA.

34. Beginning on June 21, 2007 and continuing through the present, LAM violated Section 4n of the Act, 7 U.S.C. §§ 6n (2002), and Regulations 1.31, 4.23, and 4.33, 17 C.F.R. §§ 1.31, 4.23, and 4.33 (2007) by: refusing to, upon request of the

Commission, make available for inspection its books and records, including records that would show the actual performance of the commodity pools, and by refusing to furnish the name and address of each client, subscriber, or participant, and submit samples or copies of all reports, letters, circulars, memorandums, publications, writings, or other literature or advice distributed to clients, subscribers, or participants, or prospective clients, subscribers or participants to the Commission upon its request.

35. Each day LAM failed to comply with the Commission's request to make its books and records available for inspection is alleged as a separate and distinct violation of Section 4n of the Act, 7 U.S.C. § 6n (2002), and Regulations 1.31, 4.23, and 4.33, 17 C.F.R. §§ 1.31, 4.23, and 4.33 (2007).

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 12a-1, and pursuant to its own equitable powers:

(1) Find LAM liable for violating Section 4n of the Act, 7 U.S.C. § 6n (2002), and Regulations 1.31, 4.23, and 4.33, 17 C.F.R. §§ 1.31, 4.23, and 4.33 (2007).

(2) Enter an Order pursuant to Section 6c(a) of the Act restraining Defendant, its agents, servants, employees, successors, assigns, attorneys of the Defendant and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from directly or indirectly:

> a) Dissipating, withdrawing, transferring, removing, concealing or disposing of any cash, cashier's checks, funds, assets or other property of, or within the custody, control or actual or constructive possession of the Defendant, including, but not limited to, all funds, personal property, money or securities held in sages, safety deposit boxes, all funds in deposit in any financial institution, bank or savings and loan account held by, under the actual or constructive control, or in the name of Defendant, funds or property of

investors, wherever located, whether held in the name of the Defendant, or otherwise;

b) Destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of the Defendant, wherever located, including all such records concerning the Defendant's business operations; and

c) Refusing to make available for inspection by the Commission, when as requested, any books, records, documents correspondence, brochures, manual, electronically stored data, tape records or other property of Defendant wherever located, including, but not limited to, all such records of LAM's business operations.

(3) Enter an Order directing each firm, corporation or other person or entity with notice that holds, or that is a depository of, funds, securities, property, or other assets of or under the actual or constructive control of LAM, whether held in the name of LAM or otherwise, including funds and property of investors, is prohibited from transferring, withdrawing, removing, or disposing of any such funds, securities, property, or other assets until further order of the Court;

(4) Enter an Order that representatives of the plaintiff Commission be allowed to immediately inspect the books, records and other electronically stored data, tape recordings, and other documents of the Defendant and its agents, including all such records of Defendant's business operations, wherever they are situated and whether they are in the possession of the Defendant or others and to copy said documents, data, and records either on or off the premises where they may be situated; and,

(5) Enter an Order enjoining the Defendant from denying the Commission access to LAM's records; and,

(6) Enter an Order directing the Defendant to pay a civil monetary penalty in the amount of not more than the higher of (i) triple the monetary gain to Defendant for

10

each violation of the Act and Regulations or (ii) $130,000 for violations occurring after October 23, 2004;

(7) Enter an Order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

(8) Enter an Order providing such other and further remedial ancillary relief as the Court may deem appropriate.

Date:                                              Respectfully submitted,

*/s/ Diane M. Romaniuk*
Diane M. Romaniuk
Senior Trial Attorney
A.R.D.C. No. 0341649

*/s/ Ava M. Gould*
Ava M. Gould
Senior Trial Attorney
A.R.D.C. No. 06194202

*/s/ Rosemary Hollinger*
Rosemary Hollinger
Regional Counsel
A.R.D.C. No. 3123647
Attorneys for Plaintiff,
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0541 (Romaniuk)
(312) 596-0535 (Gould)
(312) 596-0520 (Hollinger)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)

11