IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY | ) | |
| FUTURES TRADING COMMISSION, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 07 C 3598 |
| | ) | |
| LAKE SHORE ASSET MANAGEMENT | ) | |
| LIMITED, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

Lake Shore Limited's emergency motion for a stay pending appeal of the court's August 28, 2007, preliminary injunction order is before the court. The court has also had the benefit of reviewing the CFTC's response and the accompanying declaration of Mary Spear, who received information on August 28, 2007, indicating that earlier that month, Philip Baker began to dismantle Lake Shore and Hanford's shared London offices and equipment in a sudden manner which caused the landlord to believe that theft had occurred. For the following reasons and as set forth more specifically below, Lake Shore Limited's request for a stay pending appeal is granted in part and denied in part.

### Applicable Standard

"A party seeking a stay pending appeal . . . must show that it has a significant probability of success on the merits; that it will face irreparable harm absent a stay; and that a stay will not injure the opposing party and will be in the public interest. *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006).

**Likelihood of Success on the Merits**

The court assumes familiarity with its 86-page opinion addressing the CFTC's motion for a preliminary injunction and thus turns to Lake Shore Limited's arguments as to the likelihood of success on the merits of its appeal. First, Lake Shore Limited claims that the injunction enjoins entities that are not parties to the proceeding. This argument is at odds with the court's findings that Lake Shore Limited is the mere continuation of Lake Shore Inc. and that the Lake Shore entities operated as a common enterprise. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Limited*, 07 C 3598, docket #118 at 41-48 (N.D. Ill. Aug. 28, 2007). In other words, the injunction binds Lake Shore Limited wearing a variety of hats, as opposed to binding legally distinct entities.

Critically, Lake Shore Limited does not set forth any arguments regarding any factual or legal basis for its assertion that the injunction enjoins non-parties. Indeed, it fails to even acknowledge the basis for the court's ruling. Instead, it merely claims that the injunction is overly broad. As noted above, this is incorrect given the court's specific findings about the existence of the Lake Shore common enterprise and Lake Shore Limited's status as a mere continuation of Lake Shore Inc. It also means that Lake Shore has failed to identify any reason why it has a likelihood of success on the merits of this particular argument.

Second, Lake Shore Limited contends that the evidence fails to show that it engaged in fraud because the evidence was "admittedly incomplete and subject to non-fraudulent interpretations." Stay Motion at 3. As discussed at length in the court's order and as graphically depicted on the court's summary chart, which is Exhibit 1 to the August 28th order, the Lake Shore Alternative Financial Asset Funds are the relevant funds. The lack of records for the

segregated managed accounts ("SMAs") does not affect the CFTC and NFA's ability to audit Lake Shore Alternative Financial Asset Funds I, II, III, and IV (as opposed to Lake Shore Funds I, II, III, and IV, some of which include SMAs).

All four of the registered futures commission merchants ("FCMs") with accounts for the Lake Shore Alternative Financial Asset Funds produced their records. Mr. Brodersen testified that reviewing Lake Shore Limited's documents would provide a fuller picture of its activities, but that he had the trading records necessary to audit the Lake Shore Alternative Financial Asset Funds. Thus, as the court noted in its order, Lake Shore Limited's refusal to produce its records and the absence of information about the SMAs did not somehow render the FCMs' records suspect or prevent the CFTC or NFA from accurately auditing the Lake Shore Alternative Financial Asset Funds. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Limited*, docket #118 at 69, 75-77.

In its stay motion, Lake Shore Limited also repeats its familiar refrain that the CFTC's evidence was subject to non-fraudulent interpretations. This is a highly charitable view of the record that is not supported by the evidence presented during the preliminary injunction hearing. The CFTC's witnesses testified that their auditing of the Lake Shore Alternative Financial Asset Funds using the FCM records and other Lake Shore documents they received from trustworthy sources showed numerous irregularities. If Lake Shore Limited believed that any evidence existed which explained these irregularities or cast doubt on the CFTC's witnesses' testimony or the documentary evidence regarding the irregularities, it was incumbent upon Lake Shore Limited to introduce that alleged evidence. *Id*. at 76-77 ("[p]ositing theories unsupported by any

evidence is not enough to controvert the CFTC's positions where those positions are amply supported by credible evidence").

Third, Lake Shore Limited argues that the CFTC failed to establish that the allegedly fraudulent information was shown to specific investors. Again, this argument has no basis in the evidence before the court. That evidence amply showed, among other things, that Lake Shore Limited knowingly made material misrepresentations about profitability when it solicited customers and during its interactions with existing investors in the Lake Shore Alternative Financial Asset Funds. *See id*. at 62-77.

Fourth, Lake Shore Limited contends that it cannot access customer funds directly and thus could not have engaged in fraud. This argument borders on the frivolous. *See id*. at 71.

Fifth, Lake Shore Limited repeats its argument that it did not act as a CTA or CPO for the Lake Shore Alternative Financial Asset Funds and contends that this issue "remains to be litigated in a plenary trial." Stay Motion at 4. The court, however, determined that the CFTC had a strong likelihood of success on the merits of this issue. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Limited*, 07 C 3598, docket #118 at 52-58. Indeed, even Lake Shore Limited's counsel admitted that his client acted as a CTA for the Lake Shore Alternative Financial Asset Funds. *Id*. at 56 (quoting Lake Shore Limited's counsel's statement that "[t]o the extent Lake Shore Limited had a role in the activity that will be discussed in this hearing, it was a trading adviser making trading decisions"). As discussed at length by the court, this concession is amply supported by the only credible evidence in the record regarding the CTA and CPO issue.

**Irreparable Harm**

Lake Shore Limited contends that freezing the assets of the Lake Shore Alternative Financial Asset Funds is irreparably injuring the investor's interests and Lake Shore Limited's business and business reputation. The court has already addressed and rejected this argument and will not repeat its analysis here. *See id*. at 78-79.

It is also important to note that regardless of whether this court stays its asset freeze or not, Lake Shore Limited will still not be able to conduct business because it is subject to an entirely separate asset freeze issued by the NFA. This separate asset freeze is the subject of a pending administrative appeal by Lake Shore Limited. *See Lake Shore Asset Management, Ltd. v. National Futures Association*, CFTC Docket No. CRAA 07-02. The court directed the parties to apprise it of any developments in that appeal. Unless and until the separate NFA freeze is lifted, even if this court were to stay or lift its asset freeze, Lake Shore Limited would still be unable to conduct business.

Lake Shore Limited's harm argument focuses on this court's asset freeze. Lake Shore Limited thus does not contend that immediate enforcement of the document portion of the court's order will cause it any immediate and irreparable harm. The court carefully reviewed all of Lake Shore Limited's arguments about the scope of its obligation to allow inspection of its documents. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Limited*, 07 C 3598, docket #118 at 41-62. It also considered all of the possible harms that could flow from ordering production of records and granting an asset freeze. The court then found that Lake Shore Limited was required to allow inspection of its records and that the issuance of an asset freeze was necessary to protect the investors. *See id*. at 52-62, 78-79.

This brings the court to Lake Shore Limited's arguments about foreign law. These appear in the irreparable harm portion of its stay motion but are in fact arguments about likelihood of success on the merits. The court discussed the reach of the Commodity Exchange Act at length in its injunction order. *See id*. at 48-52. In a nutshell, the court found that the CFTC had made a strong showing of likelihood of success on the merits of its claim that Lake Shore Limited acted as a CTA and CPO for the Lake Shore Alternative Financial Asset Funds and used U.S. exchanges to facilitate a fraud. Without the substantial U.S. activity shown in the record, Lake Shore Limited would not have been able to operate the Lake Shore Alternative Financial Asset Funds in the manner that led to the need for an asset freeze in this case. It is also important to note that the court tailored a narrow injunction that was directed at Lake Shore Limited's actions as a CFTC-registered CTA or CPO. *See id*. at 79-82. Accordingly, for the reasons set forth in its August 28th opinion, the court finds that Lake Shore Limited has not shown that it has a significant probability of success on the merits of its claim that the Commodity Exchange Act does not govern activities taken by a CFTC-registered CTA and CPO, especially where trading is occurring on U.S. exchanges.

This completes the court's discussion of all of Lake Shore Limited's arguments regarding irreparable harm, which are basically a rehashing of the arguments it marshaled in opposition to the CFTC's motion for a preliminary injunction. For purposes of Lake Shore Limited's motion for a stay pending appeal, however, Lake Shore Limited's proffered harms miss the mark. When considering a motion for a stay pending appeal, the court must consider the effect of denying a stay during the pendency of an appeal, not rebalance the alleged harms arising from the

underlying injunction. This harm is discussed below in connection with the court's balancing of the stay factors.

### Injury to the CFTC/The Public Interest

In light of the complex tapestry of evidence supporting the CFTC's strong showing of likelihood of success on the merits of its fraud claims, the public interest favors the narrowly tailored asset freeze issued by this court. The court also reiterates that this freeze will only have a meaningful effect if the NFA lifts its own separate asset freeze directed at Lake Shore Limited.

The court also notes that Lake Shore Limited has not shown that requiring it to produce its documents – an issue that is separate from the asset freeze based on fraud and flows from its activities as a CFTC-registered CPO and CTA directing trading that took place substantially on U.S. exchanges – would harm the public interest. Indeed, the Commodity Exchange Act itself was passed to promote the public interest in regulating futures transactions. *See Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 296 at n.2 (1973).

### Balancing the Stay Factors

Broadly speaking, the court's August 28th injunction order has three components: (1) pending further court order, it freezes the Lake Shore Alternative Financial Asset Funds' accounts held by the four FCMs (Fimat, Man, Lehman, and Sentinel) and enjoins Lake Shore Limited from certain activities relating to commodity futures and options trading; (2) it addresses the scope of Lake Shore Limited's existing obligation to allow inspection of books and records and requires the parties to brief the issue of how to resolve disputes regarding documents that Lake Shore Limited believes are outside the scope of the preliminary injunction, including the

SMA documents; and (3) it enjoins Lake Shore Limited from destroying records or violating the Commodity Exchange Act.

*Asset Freeze*

With respect to this court's asset freeze and Lake Shore Limited's ability to conduct business, it is possible that the NFA might lift the asset freeze it imposed in a regulatory action against Lake Shore Limited that is currently the subject of an administrative appeal. The court has no control over the NFA's regulatory action or the administrative appeal. If the NFA was to lift its freeze, the Lake Shore Alternative Financial Asset Fund accounts would be unfrozen absent an asset freeze entered by the court. The court finds that staying the asset freeze portion of its order pending appeal is not warranted because substantial evidence supports the court's findings regarding the CFTC's likelihood of success on the merits of its fraud claims and the need to protect investors and thus demonstrates that a continued asset freeze is appropriate and necessary.

*Record Inspection*

This brings the court to the portions of the order directed at Lake Shore Limited's obligation to allow inspection of certain records. The court believes that Lake Shore Limited does not have a significant probability of success on the merits, "a winning case or even a good case" as to this issue. *Cavel v. Madigan*, — F.3d —, 2007 WL 2239215, at *4 (7th Cir. Jul. 18, 2007); *Commodity Futures Trading Com'n v. Lake Shore Asset Management Limited*, 07 C 3598, docket #118 at 52-62. In this regard, the court notes that Lake Shore Limited's appeal from the portion of the court's order which required it to allow inspection of *its own* documents that post-date its CFTC registration and relate to its activities in 2007 as the CTA and CPO for

the Lake Shore Alternative Financial Asset Funds is particularly weak given the overwhelming evidence that Lake Shore Limited directly acted as the CTA and CPO for those funds.

Moreover, the CFTC's response to Lake Shore Limited's motion for a stay pending appeal contains a series of emails that demonstrate that time is of the essence in examining Lake Shore Limited's records while they still (hopefully) exist to be examined. Mr. Rosenberg, a principal of Lake Shore Limited whose Lake Shore Limited email was previously terminated, forwarded the email strings to his lawyer, Robert Byman, on August, 28, 2007. Mr. Rosenberg had received these emails from the London landlord holding the lease for a location where "Lake Shore has its offices" along with Hanford Investments.[1] Mr. Byman forwarded the email strings to, among others, Ms. Spear and counsel of record in this case. Ms. Spear's declaration, which is attached to the CFTC's response, contains the email strings.

In the emails, Mr. Baker identified himself as the managing partner for Lake Shore Group of Companies Inc. Limited. (a combination of the names of various Lake Shore entities which is new to the court and is an addition to the already long list of similarly-named Lake Shore entities). The landlord for the London offices stated that in early August, "documents, equipment and assorted objects, including objets d'art" were suddenly removed from Lake Shore's rented offices in a manner which led him to believe that Lake Shore's office had been robbed. Mr. Baker subsequently told the landlord that items "had been removed on [his] authority" but

---

[1] The reader will recall that Mr. Baker is the Managing Director, Principal and President of Lake Shore Limited and the co-founder and managing partner of the Lake Shore Group of Companies, as well as a principal in numerous other Lake Shore entities. Hanford was one of the many companies controlled by Mr. Baker. Sentinel records show that between November 2002 and June 2007, $9,936,505.74 was wired out from Lake Shore accounts at Sentinel to Hanford for the benefit of Mr. Baker.

refused to provide any information or a list of persons authorized to enter the premises and remove items.

The emails also detail other reasons supporting the landlord's belief that Lake Shore/Hanford were going to break their lease, including Mr. Baker's comment that the "position was serious," Lake Shore's failure to pay bills, the continued flow of computers, screens, furniture and decorative objects out of the office in a manner suggesting flight or theft, and Lake Shore's decision to sell the office's remaining furniture and fixtures for £6,000. The final group of emails beginning August 22, 2007, are from Lake Shore's counsel to the landlord to discuss an "exit route" to address Lake Shore's £50,000 rent deposit and settlement of the remaining term of the 5-year lease for £63,085/year which began in January of 2006.

During the hearing on Lake Shore Limited's motion for a stay pending appeal, the court afforded Lake Shore Limited an opportunity to respond to the information in Ms. Spear's declaration. Counsel stated that the emails showed nothing more than an office move. The court disagrees. Once again, as with the preliminary injunction hearing, the CFTC has presented uncontroverted evidence which clearly supports its position, and Lake Shore Limited has responded with unsupported speculation that is at odds with the evidence in the record.

It is true that as long as an asset freeze remains in place (whether imposed by this court or the NFA), Lake Shore Limited cannot resume its trading activities vis-a-vis the Lake Shore Alternative Financial Asset Funds. Nevertheless, the emails tell the story of a landlord faced with a series of unusual events which caused him to become more and more alarmed that his tenant was suddenly closing his business and absconding. The CFTC has thus established that

time is of the essence with respect to the portions of the injunction relating to document inspection.

On the other side of the balance, the court believes that Lake Shore Limited's likelihood of prevailing on the document issue is minimal. However, if the document portion of the order is not stayed, it may cause this part of the appeal to become moot. *See San Diegans For Mt. Soledad Nat. War Memorial v. Paulson*, — U.S. —, 126 S.Ct. 2856, 2857 (2006) (Justice Kennedy, as Circuit Justice) (any harm in brief delay pending the Court of Appeals' expedited consideration of the case was slight compared to the irreparable harm arising from denial of a stay pending appeal because denial of a stay would cause the appeal to become moot).

The court finds, in the exercise of its discretion, that staying the document portion of its order is inappropriate. In reaching this decision, the court has balanced Lake Shore Limited's likelihood of success on the merits of its claims about the documents, Mr. Baker's sudden flight, along with Lake Shore's computers and documents, the need for prompt action due to the exigent circumstances surrounding Lake Shore's documents and computers, and the public and investors' interest in exposing the full extent of Lake Shore's activities. Because denial of Lake Shore Limited's request for a stay pending appeal leaves its documents subject to immediate inspection, the court enters an interim stay of the document portion of its order to maintain the status quo while the Seventh Circuit reviews Lake Shore Limited's renewed emergency motion for a stay pending appeal. If Lake Shore Limited fails to file such a motion with the Seventh Circuit by 12:00 noon on August 31, 2007, this court's interim stay will dissolve.

*Record Destruction*

The last portion of the court's order enjoins Lake Shore Limited from destroying records or violating the Commodity Exchange Act. Lake Shore Limited has not offered any reason why this part of the order needs to be stayed pending appeal. In light of recent developments, this part of the court's order appears to be exceptionally apt. Accordingly, this portion of the order will remain in effect.

## Conclusion

Lake Shore Limited's emergency motion for a stay pending appeal of the court's August 28, 2007, preliminary injunction order [#119] is granted in part and denied in part. Specifically, the court enters an interim stay of the document portion of its order to maintain the status quo while the Seventh Circuit reviews Lake Shore Limited's renewed emergency motion for a stay pending appeal. If Lake Shore Limited fails to file such a motion by 12:00 noon on August 31, 2007, the interim stay will dissolve. The court does not believe that staying the rest of the order is warranted, and even if the court were to stay the asset freeze, it would not help Lake Shore Limited because of the continued existence of the NFA asset freeze. Thus, Lake Shore Limited's request to stay the remaining portions of the court's order pending appeal is denied.

DATE: August 30, 2007            _____
                                                  Blanche M. Manning
                                                  United States District Judge