# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | 07 C 3598 |
| LAKE SHORE ASSET MANAGEMENT LIMITED, et al., | ) ) ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

This order addresses the court's recent discovery – due to its review of the docket in *In re Sentinel Management Group*, No. 07-14987 (Bankr. N.D. Ill.) as opposed to disclosure by Lake Shore Limited – that a Canadian court appointed a receiver for property that is at issue in this lawsuit.

## Background

On September 24, 2007, in the Sentinel bankruptcy case, attorneys from Vedder, Price, Kaufman & Kammholtz filed appearances on behalf of "Ernst & Young, Inc., as Receiver for Lake Shore Alternative Financial Asset Corporation Limited and Lake Shore Alternative Financial Asset Corporation 2006 Limited." The court takes judicial notice of this order, which caught its attention in a compelling way given that the CFTC's emergency motion to appoint a receiver was pending before this court.

It also takes judicial notice of an action filed in the High Court of Justice, Queen's Bench Division, Commercial Court in England. In that action, claimants Lake Shore Alternative Financial Asset Limited, Lake Shore Alternative Financial Asset Limited Account I Limited, Lake Shore Alternative Financial Asset Limited Account II Limited, Geneva Corp. Funds World

Limited (formerly known as Lake Shore Alternative Financial Asset Fund IV Limited), and Hanford Investments Limited seek an order directing the three London registered futures commission merchants ("FCMs") – Man Financial London, Lehman Brothers London, and Fimat London, who maintain the trading accounts for the Lake Shore Alternative Financial Asset Funds – to hand over the monies in the trading accounts to the claimants. This court's preliminary injunction order froze these accounts, along with funds at Sentinel, the remaining FCM for Lake Shore who acted as the cash manager and the subcustodian for the Lake Shore Alternative Financial Asset Funds, to prevent dissipation of assets.

In the High Court of Justice case, the various Lake Shore entities also ask for:

an injunction restraining each of the Defendants [the FCMs] from complying with any request or demand by the United States Commodities and Futures Trading Commission or the United States National Futures Association or any branch or agent thereof or any receiver appointed at the suit thereof, to transfer the sums and assets standing to the credit of the Claimants with the relevant Defendants as referred to above out of the jurisdiction of this Court or to deal with them in any way contrary to the instructions of the relevant Claimant, save to the extent that the appointment of such receiver and/or the validity of his request or demand in respect of such sums or assets has been recognised and enforced by this Court.

Next, the court takes judicial notice of the September 13, 2007, order from the Ontario Superior Court of Justice, No. 07-CL-7168, appointing Ernst & Young as a receiver. Specifically, this order:

- Appoints Ernst & Young as a receiver for Lake Shore Alternative Financial Asset Corporation Limited and Lake Shore Alternative Financial Asset Corporation 2006 Limited (the "Debtors"). *Id*. at p.1.

- Defines "the Property" as "all of the Debtors' current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof." *Id*. at ¶ 2.

- Empowers the receiver to "initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Debtors, the Property or the Receiver" and further provides that this authority extends to "appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding." *Id*. at ¶ 3(j).

- Specifies that these powers include "any proceeding under the United States Bankruptcy Code or any other regulatory proceedings" including but not limited to Sentinel's Chapter 11 bankruptcy case. *Id*. at ¶ 4.

- States that no proceedings against the Property shall be commenced or continued without leave of the Canadian Court and the receiver's written consent, and gives the receiver the authority to apply to any court wherever located for recognition of the order. *Id*. at ¶¶ 10, 29.

Finally, the court notes that Lake Shore Limited appealed the injunction order entered by this court. The Seventh Circuit declined to stay this order pending appeal and expedited its consideration of Lake Shore Limited's appeal from this court's preliminary injunction order (Seventh Circuit case no. 07-3070) and its appeal from an asset freeze by the National Futures Association ("NFA") (Seventh Circuit No. 07-3057).

## Discussion

This case, Lake Shore Limited's pending appeal from the grant of the CFTC's motion for a preliminary injunction (No. 07-3070), Lake Shore Limited's appeal from the NFA asset freeze order (No. 07-3057), and the British case all represent attempts by various parties to adjudicate rights to property that appear to fall within the ambit of the Canadian court's receivership order. It is unclear if the Canadian court was aware of the existence of this action, Lake Shore Limited's Seventh Circuit appeals, or the recent case filed by various Lake Shore entities in England seeking turnover of the same assets. Regardless, at this point the procedural posture of this case is very convoluted.

The existence of the receivership is highly material and the court has repeatedly rejected Lake Shore Limited's assertion that it has no relationship to other Lake Shore entities. Nevertheless, Lake Shore Limited failed to bring the Canadian case or the receivership to the court's attention.[1] In this regard, if later events show that Lake Shore Limited's counsel knew about the receivership or the existence of the Canadian case and did not advise the court, it will take appropriate disciplinary action. Be that as it may, the existence of the receivership presents abstention issues relating to this action and the Canadian action and receivership which must be resolved promptly.[2] The court notes, however, that if the Canadian case was brought by a single investor, the CFTC's action is by far more comprehensive.

When this court found out about Ernst & Young's appointment as a receiver, issuance of an order addressing three major issues was imminent. These issues are: (1) Lake Shore Limited's continued refusal to comply with provisions in the preliminary injunction order regarding document production; (2) Lake Shore's recently raised assertion of privilege with respect to the separately managed accounts ("SMAs"); and (3) the CFTC's emergency motion for appointment of a receiver.

---

[1] On the other hand, it was not shy about telling this court about its own attempt in England to obtain assets which appear to fall within the ambit of this court's preliminary injunction order, which the Seventh Circuit did not stay. The CFTC's motion for a rule to show cause why various Lake Shore entities and Philip Baker should not be held in contempt based on the filing of the British case is currently being briefed.

[2] In this regard, the court flatly rejects Lake Shore Limited's request, in its request for this court to take judicial notice of the British case, for this court to abstain in favor of the later-filed and far less comprehensive British case. That case appears to be an attempt to perpetrate a fraud on the investors, whose money Lake Shore is trying to get for itself in apparent violation of this court's preliminary injunction order, which the Seventh Circuit did not stay. As such, it is a completely unacceptable candidate for abstention.

These issues are all intertwined in that they must be resolved to allow the court to respond to the investors' very understandable desire to get their sizable investments back promptly (to the extent sufficient monies are available) pending resolution of litigation.[3] A full picture of the Lake Shore entities' financial affairs is necessary to enable the court to trace the flow of monies between the various entities and ascertain the precise relationship between the entities and what happened to the investors' money. Indeed, Lake Shore Limited has acknowledged as much, since it has repeatedly argued that a full audit cannot be conducted without full records.[4] It will also allow this court to follow the Seventh Circuit's directive to be receptive to requests from the investors to release their money, given that without more information, the court has no way of identifying and notifying investors, figuring out the total amount of money available for distribution, and establishing a fair way of distributing available funds.

At this point, however, the Canadian receiver's impact on this case must be resolved before the court can continue to address this case's merits. All this is to say that the court has serious questions about Lake Shore Limited's litigation tactics, and an immediate hearing is necessary to address the impact of the Canadian receivership on this action.

---

[3] To date, a single investor has asked for release of his funds. Due to the discovery situation, the CFTC has been unable to locate and give notice to all of the investors.

[4] A full audit must be distinguished from the court's task when considering the CFTC's motion for a preliminary injunction. There, the court focused on records from the FCMs relating to the Lake Shore Alternative Financial Asset Funds. This analysis revealed numerous troubling issues, but necessarily was not a 100% complete analysis of all of Lake Shore's books. As noted in the CFTC's motion for an appointment of a receiver, such an analysis would require all of the interrelated Lake Shore entities' records as well as, at the very least, review by a forensic accountant.

The court further notes that an interlocutory appeal that is not stayed pending resolution of the appeal does not divest this court of jurisdiction. *See, e.g., Chrysler Motors Corp. v. International Union, Allied Indus. Workers*, 909 F.2d 248, 250 (7th Cir. 1990). This court and the Seventh Circuit thus are conducting concurrent proceedings relating to the dispute about, among other things, the proper disposition of the Lake Shore Alternative Financial Asset Funds, that are also the subject of the Canadian receivership. This court will, of course, act in accordance with any action the Seventh Circuit may take or directions it may provide in the event it shares this court's concerns regarding the identity of the proper party to defend against the CFTC's lawsuit.

## Conclusion

For the reasons set forth above, the parties are directed to appear on Friday, September 28, 2007, at 11:30 a.m., to address the impact of the Canadian receivership on this action. Counsel for the receiver are also requested to appear. In addition, the court requests that the receiver file copies of the complaint, docket sheet, and any substantive pleadings or orders in the Canadian case with this court as soon as possible. Finally, the clerk is directed to forward a copy of this order to the Seventh Circuit.

DATE: September 27, 2007

_____
Blanche M. Manning