In The United States District Court
For The Northern District Of Illinois
Eastern Division

| | |
|---|---|
| Commodity Futures Trading Commission, Plaintiff, <br><br> vs. <br><br> Lake Shore Asset Management Limited, et al., Defendants. | Civil Action No: 07 C 3598 <br><br> Honorable Judge Manning <br> Magistrate Judge Mason |

**BRIEF IN SUPPORT OF THE PLAINTIFF'S MOTION FOR RULE TO SHOW CAUSE WHY LAKE SHORE COMMON ENTERPRISE and PHILIP BAKER SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE PRELIMINARY INJUNCTION**

**SUMMARY**

On August 28, 2007, this court entered an order that froze the assets of Lake Shore Alternative Financial Asset Funds I, II, III and IV that are on deposit at four futures commission merchants ("FCMs") including Lehman Brothers International Limited ("Lehman"), Fimat International Banque SA ("Fimat"), and Man Financial Limited ("Man"). Several entities that are part of the Lake Shore Common Enterprise and Hanford Investments Ltd. ("Hanford"), a company controlled by Philip Baker, filed a lawsuit in England seeking "repayment" of the assets held by the three FCMs to Lake Shore entities that are part of the common enterprise in violation of this Court's Order. Therefore, the Plaintiff is requesting that this Court issue a rule to show cause why the Lake Shore Common Enterprise and Philip Baker should not be held in contempt of court.

1

## FACTS

<u>The Preliminary Injunction</u>

On August 28, 2007, this Court entered its Memorandum and Order that found among other things that: "the Lake Shore entities operated as a common enterprise" (p. 44); "Lake Shore Alternative Financial Asset Funds I, II, III, and IV are also all part of the Lake Shore common enterprise and inextricably related to Lake Shore Limited" (p. 46); "there is no meaningful distinction between any of these entities" (p. 47); "and the court has the power not only to enjoin the named defendant Lake Shore Asset Management Limited, but also the other Lake Shore entities that formed the common enterprise" (p. 47). In addition, the Court found that "…the only FCMs for any Lake Shore Funds (I.e., Lake Shore Alternative Financial Asset Funds I, II, III, and IV) are Fimat, Lehman, Man and Sentinel. Fimat, Lehman, and Man have all of the Lake Shore Alternative Financial Asset Funds' trading accounts." (p. 64)

Based upon the evidence presented at the preliminary injunction hearing, the Court found that "there is a substantial risk of harm to investors' financial interests if Lake Shore Limited is allowed to continue its present course of action." (p. 78) Indeed, the Court recognized that "due to the substantial risk of investor harm shown by the present record, an asset freeze is necessary not only to protect investors but also to prevent the potential dissipation of monies in the accounts." (p. 80)

The Court entered a preliminary injunction which stated that: "Defendant Lake Shore Limited, individually and as part of the Lake Shore common enterprise, and the

Lake Shore common enterprise are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

> withdrawing, transferring, removing, dissipating, concealing or disposing of in any manner, any assets related to Lake Shore Alternative Financial Asset Funds I, II, III and IV, including but not limited to, all funds, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan accounts held by, under the control of, or in the name of Lake Shore Alternative Financial Asset Funds I, II, III, and IV." (pp. 84-5)

"The injunctive provisions of this order shall be binding on Lake Shore Limited and the Lake Shore common enterprise and any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Lake Shore Limited or the Lake Shore common enterprise and any person who receives actual notice of this order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with Lake Shore Limited or the Lake Shore common enterprise." (p. 85)

Finally, in regard to Mr. Baker, the Court found that "Philip Baker is the Managing Director, Principal and President of Lake Shore Limited…the co-founder and managing partner of the Lake Shore Group of Companies...the President and Secretary of Lake Shore Alternative Asset Ltd. …and the Lake Shore Alternative Financial Asset Account. (p. 2) Baker operates Hanford Investments Limited ("Hanford") (p. 72) Hanford received almost $10 million in payments from the Funds at Sentinel. (p.72) However, Lake Shore failed to disclose its transfer of interest payments to Hanford. This was a conflict of interest that had to be disclosed. (p. 73)

Hence, the Court's order was binding on Mr. Baker in his capacity as an officer of any of the Lake Shore entities that make up the Lake Shore common enterprise.

Moreover, as person with notice of the preliminary injunction, he is bound by its terms in his capacity as the control person behind Hanford Investments.

The Claim in the British Courts

On September 21, five claimants, four of whom were found to be part of the Lake Shore Common Enterprise, and Hanford, a Baker-controlled entity, filed a claim in the High Court of Justice in London, England, seeking the payment to them of the funds currently held by Lehman, Fimat and Man. (A copy of this Claim is attached as Exhibit A) In the first claim, Lake Shore Alternative Asset Account II Limited and Lake Shore Alternative Financial Asset Fund IV (now known as Geneva Corp Funds World Limited[1]), both part of the Lake Shore Common Enterprise, are seeking "repayment ...or such transfer as [they] may direct, of all sums..." in the accounts at Man. In its second claim, Lake Shore Alternative Financial Asset Fund IV Limited seeks "repayment to [it] or such transfer as [it] may direct of all sums..." in the accounts at Fimat. In the third claim, Lake Shore Alternative Financial Asset Ltd., Lake Shore Alternative Financial Asset Account I Ltd., and Lake Shore Alternative Financial Asset Account II Ltd. seek to order Man to sell U. S. Treasury Bills held for the benefit of the pool participants in violation of preliminary injunction which prohibits the defendants, their officers and agents from disposing of, in any manner, assets of the Funds. In the fourth claim, Lake Shore Alternative Financial Asset Ltd., Lake Shore Alternative Financial Asset Account I Ltd., and Lake Shore Alternative Financial Asset Account II Ltd. seek to order Man to "repay to" Lake Shore Alternative Financial Asset Limited, Lake Shore Alternative Financial Asset Account I Limited and Lake Shore Alternative Financial Asset Account

---

[1] Renaming of Lake Shore Alternative Financial Asset Fund IV Limited raises questions in its own right about other possible contemptuous actions on the part of the defendants.

4

II Limited or "transfer as [they] may direct all sums…" on deposit at Man including the proceeds of the sale of the above mentioned Treasury Bills. In the fifth claim, Hanford seeks to order the FCMs to make payments to it which appears to be a dissipation of the Funds' assets in violation of the asset freeze portion of the preliminary injunction and a further fraudulent act (undisclosed transfer) on the part of the Lake Shore Common Enterprise and Baker in violation of the substantive injunction prohibiting additional acts in violation of Section 4b of the Act.

## ARGUMENT

The court has inherent authority to enforce compliance with its own orders. *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). "This Court may punish, as contempt of court, failure to comply with its injunctive order." *FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1029 at 1032 (N.D. Ind. 2001) citing *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct.. 584, 42 L.Ed.2d 574 (1975); *S.E.C. v. Simpson*, 885 F.2d 390 (7th Cir. 1989). To make a *prima facie* showing of contempt, the government needs show by clear and convincing evidence that a defendant has knowingly failed to comply with a court order. *FTC v. Think Achievement,* 144 F. Supp at 1034; *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525 (11th Cir. 1992). "The Court must determine by considering the facts whether there is clear and convincing evidence that [the] recalcitrant party was aware of the terms of the order and proceeded to violate those terms." *SEC v. Parkersburg Wireless Ltd.,* 156 F.R.D. 529 (D.D.C. 1994). Once the CFTC has made the prima facie showing that the Lake Shore entities and Baker have violated the Court orders, "the burden of production shifts to the alleged contemnor." Thus, the defendants' usual tactics of proceeding by innuendo and speculation will not work here.

5

The purpose of a civil contempt action is to "coerce the contemnor into complying with the court's demands...." *FTC v. Think Achievement Corp.,* 144 F.Supp. 2d at 1033. The Court "has broad discretion in using its contempt power to require adherence to court orders. *O'Connor v. Midwest Pipe Fabricators, Inc.,* 972 F.2d 1204, 1209 (10th Cir. 1992)(holding defendants in contempt for failing to provide an accounting), citing *U.S. v. Riewe,* 676 F.2d 418 (10th Cir. 1982). Judicial sanctions in civil contempt proceedings may be employed for either or both of two purposes: 1) to compensate the complainant for losses sustained; and 2) to coerce the defendant into compliance with the court's order. *United States v. United Mine Workers,* 330 U.S. 258, 303-304 (1947). "Thus, civil contempt proceedings are coercive and remedial, but not punitive in nature, and sanctions for civil contempt are designed to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *FTC v. Think Achievement,* 144 F.Supp.2d at 1033.

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Id.* The Lake Shore entities and Mr. Baker have worked diligently to obstruct the proceedings in this manner. The time has come for the court to take action to enforce its orders and to bring their behavior under control.

The Commission is asking the Court to impose both remedial and compensatory relief. Specifically, the Commission is requesting that the Court order the Lake Shore entities that filed the claim in England to drop claims one through five seeking payment of frozen funds to themselves and Hanford, a Baker controlled entity, in violation of this

6

Court's order and that the defendants pay the Commission's fees and expenses incurred in bringing this contemptuous conduct to the attention of the Court.

In essence, we are asking this Court to enjoin the defendants from litigating matters in a foreign court that violate this Court's order. It should be noted that we have not asked that the entire claim be withdrawn, i.e., that portion of the sixth claim that asks that the FCMs be ordered not to comply with the Receiver's instructions until his appointment by this Court is accepted by the English courts does not on its face appear to be contemptuous. Injunctions of this nature are permitted "upon a finding that letting the two suits proceed would be gratuitously duplicative, or as the cases sometimes say 'vexatious and oppressive.'" *Allendale Mutual Insurance Company v. Bull Data Systems, Inc.*, 10 F.3d 425, at 431 (7th Cir. 1993). In that decision, the Seventh Circuit went on to note that "Courts of equity have long issued injunctions against the use of litigation, including litigation in foreign courts, not to obtain a decision on the merits but to harass a party." *Id.*

"…[A]n award of expenses and fees in civil contempt proceedings is proper and is independent of any award of compensatory damages…(citations omitted) It is also well settled that such awards may be made not only to private plaintiffs but to government agencies as well." *CFTC v. Premex, Inc.*, 655 F.2d 779 at 785-6. (7th Cir. 1981).

Date: October 4, 2007                                          Respectfully submitted,

                                                                      **s/ Rosemary Hollinger**
                                                                       Rosemary Hollinger
                                                                       Regional Counsel
                                                                       A.R.D.C. No. 3123647

**s/ Ava M. Gould**
Ava M. Gould
Senior Trial Attorney
A.R.D.C. No. 06194202

Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0535 (Gould)
(312) 596-0520 (Hollinger)
(312) 596-0700 (office number)
Fax (312) 596-0714