**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES COMMODITY** | ) | |
| **FUTURES TRADING COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **07 C 3598** |
| | ) | |
| **LAKE SHORE ASSET MANAGEMENT** | ) | |
| **LIMITED, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

The court's August 28, 2007, preliminary injunction order and October 4, 2007,

receivership order imposed immediate obligations on defendant Lake Shore Asset Management

Limited ("Lake Shore Limited") and Philip Baker, Lake Shore Limited's Managing Director,

Principal and President. Lake Shore Limited has explicitly refused to comply with the court's

orders and Mr. Baker has declined to participate personally in this litigation. The court

previously held that Lake Shore Limited and Mr. Baker were in civil contempt of court based on

their failure to comply with the preliminary injunction and receivership orders. The court hereby

imposes remedial and coercive civil contempt sanctions, detailed below, against Mr. Baker and

Lake Shore Limited.

**I.     Background**

The court assumes familiarity with its prior orders in this case, and will thus provide only

a brief recap of relevant facts.

**A.     The Statutory Injunction**

On June 27, 2007, the court entered a statutory ex parte restraining order against Lake

Shore Limited, and its agents, servants, attorneys, and employees that prohibited them from,

among other things, "dissipating, withdrawing, transferring, removing, concealing or disposing of" any assets or property of Lake Shore Limited or any investors' funds. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 12. This order also prohibited Lake Shore Limited from "destroying, mutilating, concealing, altering or disposing of" any books and records, wherever located. *Id.*

Nevertheless, on or about July 4, 2007, and in direct violation of the June 27th statutory restraining order, Lake Shore Limited directed the transfer of certain books and records from the offices of Roth Mosey & Partners LLP, a Canadian accounting firm that acted as Fund Administrator, to an undisclosed location in Bermuda. The receiver represents that these documents were subsequently shipped to an undisclosed location in Switzerland. To date, the receiver and CFTC's multiple requests to Lake Shore Limited requesting production of these documents have been either ignored or rebuffed.[1]

### B.     The Preliminary Injunction

The CFTC moved for a preliminary injunction and in support of its opposition, Lake Shore Limited submitted multiple declarations from Mr. Baker. After conducting an evidentiary hearing, on August 28, 2007, the court entered an order granting in part and denying in part the

---

[1] It is true that on August 2, 2007, the Seventh Circuit vacated the statutory restraining order. *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, 496 F.3d 769 (7th Cir. 2007). However, as of the moment that the statutory restraining order was entered, barring a stay by this court or the Seventh Circuit, Lake Shore Limited was obligated to comply with it. Compliance with orders requiring immediate action is not optional. In any event, Lake Shore Limited's victory with respect to the statutory restraining order was short-lived because, as discussed later in this order, the documents from Roth Mosey were clearly responsive to later orders also requiring production. Nevertheless, Lake Shore Limited failed to produce these documents in direct violation of this court's orders and, instead, affirmatively caused them to be moved from Canada to Bermuda and then to Switzerland.

CFTC's request for a preliminary injunction. *See id*. at Docket No. 118. In that order, the court, among other things, "restrained, enjoined and prohibited" the Lake Shore Common Enterprise from refusing to permit authorized representatives of the CFTC from inspecting and copying books, records or other property of the Lake Shore Common Enterprise. The court also restrained the Lake Shore Common Enterprise from "withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any assets related to Lake Shore Alternative Financial Asset Funds I, II, III and IV." *See id*. at 84.

Lake Shore Limited appealed and the Seventh Circuit denied its request to stay the preliminary injunction order until its appeal was resolved. *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07-3057 & 07-3070 (Sept. 7, 2007) (unpublished order). Despite denial of its motion for a stay pending appeal, Lake Shore Limited and its principal, Mr. Baker, have to date refused to comply with the preliminary injunction order.

## C.    The Receivership Order

On October 4, 2007, the court entered a memorandum and order: (1) issuing a rule to show cause why Lake Shore Limited should not be sanctioned and held in civil contempt based on its failure to comply with the preliminary injunction order; (2) issuing a rule to show cause why Lake Shore Limited's counsel should not be sanctioned for engaging in evasive and dilatory tactics; (3) finding that documents relating to the segregated managed accounts ("SMAs") that are part of the Lake Shore Funds were discoverable and ordering Lake Shore Limited to produce these documents; and (4) appointing a receiver. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192.

The court also entered a separate order addressing the receiver's authority and responsibilities. *See id*. at Docket No. 194. This order required Lake Shore Limited to cooperate with the receiver by, among other things, taking actions necessary to effect the immediate turnover of books and records and to transfer investor funds to the receiver. In addition, it explicitly required the Lake Shore Common Enterprise and its agents, employees, independent contractors, attorneys and all other persons served with a copy of the order to "cooperate fully with and assist the Receiver in the performance of his duties." *Id*. at 5. The court will refer to Docket Nos. 192 and 194 collectively as the receivership order.

On October 15, 2007, the Seventh Circuit Court of Appeal denied Lake Shore Limited's emergency motion to stay the receivership order pending the outcome of Lake Shore Limited's appeal. *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07-3408 (7th Cir. Oct. 15, 2007) (unpublished order). Despite denial of its motion for a stay pending appeal, Lake Shore Limited and its principal, Mr. Baker, have to date refused to comply with the receivership order.

### D.     Notice of the Court's Orders – Lake Shore Limited & Mr. Baker

#### 1.     Lake Shore Limited

Lawyers at Sidley Austin, the firm that formerly represented Lake Shore Limited, have consistently stated that they advised Lake Shore Limited of its obligation to comply with the preliminary injunction and receivership orders upon the issuance of these orders but that Lake Shore Limited, via Mr. Baker, declined to do so. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket Nos. 286 (filing by Lake Shore Limited regarding its failure to comply with the preliminary injunction order) & 309 (same,

regarding the receivership order); *see also* Docket No. 289 at Ex. K; Transcript of Proceedings of November 6, 2007 at 7:5-23) ("[W]e say to our client: You have an order. You should obey the order. Then our client says: We're not going to give them anything because we have these foreign laws . . . . Judge, I assure you as I stand in front of you, I assure you that when we've gotten an order, we have passed it on to our client and said: You are dutybound to obey the order").

The firm of Howard Kennedy in London represents Lake Shore Limited and has acknowledged that Lake Shore Limited is choosing to wait for the Seventh Circuit to rule on Lake Shore Limited's appeal of the preliminary injunction order before deciding whether to comply with this court's orders. *See id*. at Ex. L. Specifically, on November 5, 2007, counsel there (who signs as "Howard Kennedy") wrote to the attorneys for the London registered futures commission merchants ("FCMs") holding Lake Shore customer funds. In that letter, counsel noted that the professional directors of the Lake Shore entities (*i.e.*, at the very least, Mr. Baker) believed that they had an obligation under the laws of the Turks & Caicos and the British Virgin Islands to challenge the right of any entity seeking to obtain assets held by the FCMs.[2] Counsel

---

[2] Once a stay pending appeal is denied, immediate compliance is, of course, mandatory. In any event, the alleged duty to protect the investors' money from being distributed to the investors themselves – besides being baseless because the money belongs to the investors – does not even purport to explain why the Lake Shore entities have refused to release records for the London FCMs. *See id*. at Docket No. 289, at Ex. M (November 7, 2007, letter from counsel for the FCMs to Mr. Kennedy stating that the Lake Shore entities' alleged obligation arising under the laws of the Turks & Caicos and the British Virgin Islands to challenge attempts to reach assets did not reach the receiver's request for documents). The same can be said for the SMA documents, which must be produced pursuant to a portion of the court's October 4th receivership order that was not appealed. The Seventh Circuit has declined to stay any of this court's orders and this court entered a protective order shielding the investors' personal information. *See id*. at Docket No. 296. Nevertheless, no Lake Shore entity has signed a release allowing the London FCMs to release records and no documents relating to the SMAs have been produced. The

then went on to say that the Lake Shore entities had appealed the preliminary injunction and receivership orders and concluded that "[i]t is expected that the Judgment of the Court of Appeals will be delivered in the very near future. Accordingly, we shall write to you again once that Judgment has been handed down." *Id*.

Finally, Lake Shore Limited has filed a response addressing the issue of what sanctions should be imposed. *See id*. at Docket No. 342-1. Thus, Lake Shore Limited indisputably has notice regarding the civil contempt proceedings and the underlying orders.

### 2. Mr. Baker

William Nissen, one of the Sidley Austin attorneys, advised the court that throughout his representation of Lake Shore Limited, he has "been in regular contact with Mr. Schwab [Lake Shore Limited's attorney in Switzerland] and Mr. Baker by e-mail and telephone" and that "[t]hey have been provided with each substantive Court order promptly upon its entry." *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 291 at ¶ 21 (Affidavit of William Nissen); *see also* ¶ 22 (Mr. Nissen advised Messrs. Schwab and Baker about the entry of the preliminary injunction order and the Seventh Circuit's denial of Lake Shore Limited's motion for a stay pending appeal); ¶ 33(b) (counsel was in regular contact with Mr. Baker via e-mail and telephone and promptly sent him copies of all substantive orders).

Mr. Baker also retained his own counsel upon Mr. Nissen's advice based on the potential for a conflict of interest between Mr. Baker and Lake Shore Limited. *See id*. at ¶ 26 (Mr. Baker

_____

receiver is currently gathering investor records and using these to reconstruct the relevant Lake Shore records.

retained Chicago attorney Constantine Gekas to advise Mr. Baker in his personal capacity).[3]  In

addition, another one of Lake Shore Limited's former attorneys at Sidley Austin, Michael

Sweeney, told counsel for the receiver that Mr. Nissen had forwarded correspondence about the

receivership order to Mr. Baker in his capacity as the principal of Lake Shore Limited.  *See id*. at

Docket No. 289, Ex. I.

###### E.    Contempt Orders

To date, Lake Shore Limited has refused to produce documents that are responsive to the

court's orders, including but by no means limited to its CTA and CPO records, the account

statements for the London FCMs, its administrative books and records and customer files, and

the records of the British Virgin Islands and Turks and Caicos Islands Lake Shore entities.

Moreover, Lake Shore Limited, through its principal, Mr. Baker, has refused to execute the

consent and transfer directives that would allow third parties and affiliated entities to produce

certain records and transfer the investor funds to the receiver for distribution to the investors.

In addition, as counsel for the London FCMs has correctly observed in correspondence to

an attorney at Howard Kennedy (Lake Shore Limited's London law firm), Lake Shore entities'

alleged obligations arising under the laws of the Turks & Caicos and the British Virgin Islands to

challenge attempts to reach assets do not apply to requests for documents.  *See id*. at Docket No.

---

[3]    Although the evidence indicates that Mr. Baker had retained Mr. Gekas as of
November 2007, Mr. Baker has declined to participate in these proceedings, his current physical
location is unknown, and he appears to be successfully evading service of process.  Thus, the
court does not know if Mr. Gekas is continuing to represent Mr. Baker.  Nevertheless, the record
indicates that Mr. Gekas is one of many lawyers who has communicated with Mr. Baker about
this court's orders.

289, at Ex. M.⁴  This is consistent with Lake Shore Limited's behavior in this case:  it repeatedly raises previously-rejected arguments that apply to certain aspects of the court's orders and then simply ignores the remainder of the court's orders.

Accordingly, on November 9, 2007, the court found that Lake Shore Limited was in civil contempt of court based on its refusal to comply with the document production portions of the preliminary injunction order.  In that order, the court issued a rule to show cause directed at Mr. Baker personally based on the preliminary injunction order, noting that the rationale in its October 4th order directing Lake Shore Limited to show cause why it should not be held in contempt based on its failure to comply with the preliminary injunction order applied with equal force to Mr. Baker.  *See* Fed. R. Civ. P. 65(d) (a preliminary injunction is binding on "the parties to the action, their officers, agents, servants, employees, and attorney, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise").  It also issued a rule to show cause why Lake Shore Limited and Mr. Baker should not be held in civil contempt for failing to comply with the receivership order.

On November 20, 2007, the court found that Lake Shore Limited was in civil contempt of the receivership order.  *Id*. at Docket No. 323.  It then once again rejected Lake Shore Limited's attempt to use the pendency of the preliminary injunction appeal to excuse its non-compliance with this court's orders.  *Id*. at 4 (as stated "in multiple orders, . . . when the Seventh Circuit denies a stay pending appeal, the losing party cannot use the pendency of its appeal to excuse

---

⁴  In this regard, the court notes that it entered a protective order in this case to protect the investors' personal information.  *See id*. at Docket No. 296.  Nevertheless, no Lake Shore entity has signed a release allowing the London FCMs to release records or, indeed, has provided any documents other than the inadequate ones produced at the start of this case.

non-compliance with this court's orders. Such a position would render the Seventh Circuit's order denying a stay pending appeal a nullity"). The court also held that Mr. Baker was in civil contempt of both the preliminary injunction and receivership orders. *Id.*

The court gave Mr. Baker an opportunity to present his position to the court but he declined to do so. Lake Shore Limited filed a response addressing the issue of what sanctions should be imposed. *See id.* at Docket No. 342-1. In its response, it repeats arguments that have been previously rejected by the court to preserve the record and acknowledges that the court has already ruled. Specifically, it contends that the interest on Lake Shore funds at Sentinel that was transferred to Hanford was not transferred from Lake Shore accounts in the name of Lake Shore Limited. It also asserts that it has no legally cognizable relationship to any other Lake Shore entity. Finally, Lake Shore Limited states that "there is no evidence of financial resources of the Defendant [Lake Shore Limited] before this court." *Id.* at ¶ 16.

## II.   Discussion

Civil contempt sanctions are meant to coerce compliance and are avoidable through obedience. *See, e.g, United States Dept. of Energy v. Ohio*, 503 U.S. 607, 621-22 (1992) (collecting examples of coercive civil contempt sanctions); *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 737 (7th Cir. 1999) ("[c]oercive sanctions . . . are really the essence of civil contempt" and "seek to induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express directive from the court"). The court's equitable powers in civil contempt proceedings are broad, *Spallone v. United States*, 493 U.S. 265, 276 (1990), and include the authority to impose sanctions to coerce compliance with a court order, *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994), and to

compensate affected persons and entities for losses caused by the contemnor's actions, *Transact Technologies, Inc. v. Isource Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005).

In determining the type of civil contempt sanctions that are warranted, the court must consider: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999), *citing United States v. United Mine Workers*, 330 U.S. 258 (1947); *see also Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). The determination of whether a particular remedy is warranted and necessary is within the court's discretion. *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1352-53 (2d Cir. 1989).

Here, the court can make definitive findings about factors one and four. With respect to the harm caused by Lake Shore Limited/Mr. Baker's actions, as discussed at length in numerous orders issued by the court, the lack of records is causing serious harm to the investors and the public interest. The investors are being further harmed by Lake Shore's refusal to sign the consent directives turning the London FCM money (which belongs to them) over to the receiver so it can distribute that money to them. While Lake Shore entities appear to have abandoned their effort to use the English courts to collaterally attack this court's orders and seize funds belonging to investors, the refusal to turn over money to the receiver that indisputably will be returned to its rightful owners (the investors) is suspicious and extremely disturbing, especially when viewed against the receiver's preliminary analysis showing a shortfall in excess of $100 million (assuming a 50% recovery from the Sentinel bankruptcy and 100% recovery of the

money at the London FCMs). *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 334.

With respect to willfulness, the record shows that Lake Shore Limited/Mr. Baker are aware of this proceeding and the court's orders and have repeatedly chosen to disobey the court's clear directives in order to serve their own ends. Obeying court orders is not optional. *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07-3408 (7th Cir. Oct. 15, 2007) (unpublished order) ("Injunctions must be obeyed; there is no other alternative"). This course of conduct is unacceptable and must cease. With this in mind, the court turns to Lake Shore Limited and Mr. Baker's financial circumstances, the appropriateness of remedial sanctions, and the probable effectiveness of various non-monetary and monetary sanctions.

### A.    Financial Circumstances

In-house counsel for the receiver submitted an affidavit summarizing her analysis of financial documents in this case, including financial spreadsheets prepared by the receiver's accountant from documents relating to Lake Shore Limited's bank accounts. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, Docket No. 324-2. Based on her review, she concluded that Mr. Baker has substantial assets that are separate and apart from the investor funds held at the three London FCMs and Sentinel, and that these funds are available to pay contempt sanctions for both Mr. Baker and Lake Shore Limited. Specifically, Hanford Investments, a Turks and Caicos company controlled by Mr. Baker, received at least $10 million in interest from Lake Shore accounts at Sentinel.

The receiver's analysis is consistent with evidence about Hanford presented at the preliminary injunction hearing that has not been challenged on appeal. *See Commodity Futures*

-11-

*Trading Com'n v. Lake Shore Asset Management Ltd.*, Docket No. 118, at ¶¶ 101-102 (Sentinel records show that between November 2002 and June 2007, $9,936,505.74 was wired out from Lake Shore accounts at Sentinel to Hanford for the benefit of Philip Baker); ¶¶ 103-104 and pp. 72-73 (Lake Shore Group and Lake Shore Limited's disclosure documents improperly failed to advise investors that interest would be paid to Hanford); ¶ 109 (in 2004, Hanford received a significant portion of the commissions charged to Fund I by Man).[5]  As Mr. Baker has declined to subject himself to the court's jurisdiction by commenting on his financial status, the record does not show what his other resources are or whether the Hanford money has been dissipated and, if so, by how much.[6]  The court nevertheless finds that given the very substantial amount of money diverted to Hanford, Mr. Baker is – in the words of one of his London lawyers at the firm of Howard Kennedy – "a man of substance."  *Id*. at Docket No. 121-2, at p. 7.

---

[5]  The court has not yet determined if Hanford is part of the Lake Shore Common Enterprise, largely because the CFTC did not present evidence on this point other than the fact that Mr. Baker controls Hanford and Sentinel transferred interest earned on Lake Shore accounts to Hanford without properly disclosing this to investors.  The same can be said for Anglo International Associates Limited, another entity controlled by Mr. Baker that received undisclosed interest transferred from Lake Shore funds.  The court found that the failure to disclose the interest transfers was troubling but did not definitively establish that Hanford and Anglo were part of the Lake Shore Common Enterprise.  *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, Docket No. 118, at 72-73.  Thus, resolution of these questions will have to wait for another day.

[6]  In this regard, the court notes that Lake Shore Limited has been incurring legal bills and in June of 2007, Hanford appears to have made a discretionary expenditure by investing in real property in Greece.  *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, Docket No. 118, at ¶ 105 (summarizing evidence showing that on June 4, 2007, Hanford, via a Bank of New York wire, sent $719,993.50 to Lefkada, Athens, Greece, for the purchase of real estate).  Nevertheless, a $10 million dollar starting point is significant, and may well not even represent the full assets of Hanford and Mr. Baker.

Mr. Baker's personal wealth does not necessarily correlate to that of Lake Shore Limited, even though he is its Managing Director, Principal and President. Lake Shore Limited is a Bermuda corporation, and the court declines to engage in unescorted exploration of whether Bermuda law recognizes the doctrine of piercing the corporate veil. All the evidence presented to date shows that Lake Shore Limited was intertwined with numerous other Lake Shore entities, and given the lack of financial records it is impossible to ascertain the extent of its resources.

Lake Shore Limited has itself acknowledged that it has not produced any evidence relating to its financial resources. *Id*. at 342-1 at ¶ 16. "It is settled that in raising this defense [of financial impossibility], the defendant has a burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 658 (2nd Cir. 2004) (a contemnor claiming that it lacks the financial capacity to pay a civil contempt sanction bears the burden of establishing its entitlement to this defense).

Lake Shore Limited is, of course, between a rock and a hard place, as the documents relating to its financial condition are among the documents it has refused to produce, leading to the instant civil contempt proceedings. Nevertheless, the court is not required to accept its bald assertion that it lacks the financial ability to pay any fine, especially in a situation where it lacks clean hands given that all indications are that it is affirmatively hiding its own records. *See New York State Nat. Organization for Women v. Terry*, 886 F.2d at 1353 (rejecting claim of financial inability where the contemnor refused to produce any information regarding its financial resources, and holding that "[a] contemnor's failure to provide financial information upon which

the burden of a sanction may be evaluated "may not be charged . . . against the [plaintiffs] or result in a holding that the district court abused its discretion in imposing the sanction").

Moreover, its unsubstantiated claims of poverty are inconsistent with evidence showing that Mr. Baker has been footing Lake Shore Limited's legal bills. He has caused Lake Shore Limited and/or other Lake Shore entities to retain lawyers in numerous locations around the globe who have participated in the defense of this action: Chicago (multiple lawyers at Sidley Austin, followed by a series of attorneys who advised the court that they were going to represent Lake Shore Limited but never actually filed appearances, and then Mr. McGurk), Switzerland (Mr. Schwab), England (Messrs. Morris and Butler at Howard Kennedy), Germany (Mr. Schultz), the Turks & Caicos (Mr. Trowbridge), and the British Virgin Islands (Mr. Terblanche).[7]

Lake Shore Limited thus has shown that it has the ability to pay for expenses it chooses to incur. This means that it also has the ability to pay for the consequences of its repeated defiance of this court's orders. The court finds that it is appropriate to continue on in the manner started by Mr. Baker (*i.e.*, with Mr. Baker footing Lake Shore Limited's expenses relating to this case). Therefore, the court concludes that financial sanctions should be payable jointly and severally by Mr. Baker and Lake Shore Limited.

   **B.    Expenses Caused by Lake Shore Limited and Mr. Baker's Contumacious Conduct – Remedial Sanctions**

The CFTC and the receiver seek to recover their fees and expenses caused by Lake Shore Limited and Mr. Baker's failure to comply with the preliminary injunction order (the CFTC) and

---

[7] Mr. Baker also retained Mr. Gekas in Chicago to advise him individually, although Mr. Baker has not been served or appeared in this action and, in fact, appears to be evading service of process.

the receivership order (the CFTC and the receiver). The court may award civil contempt

sanctions "to compensate the complainant for losses sustained as a result of the contumacy."

*United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Any such fine "must be based on

evidence of actual loss." *Id*. at 699-700, *quoting S. Suburban Hous. Ctr. v. Berry*, 186 F.3d at

854; *United Mine Workers*, 330 U.S. at 304 (compensatory sanctions should reimburse the

injured party for its actual damages). Moreover, when considering whether to award

compensatory sanctions, the Seventh Circuit has held that a contemnor's financial circumstances

are relevant, to the extent that they are supported by admissible evidence. *South Suburban*

*Housing Center v. Berry*, 186 F.3d at 854-55.

The court finds that Lake Shore Limited and Mr. Baker's actions caused the CFTC and

the receiver to incur legal fees and expenses. Fundamentally, the public fisc and – even worse –

the investors should not have to pay for costs flowing from Lake Shore Limited and Mr. Baker's

intentional flouting of this court's orders. This is especially true when the only evidence in the

record consistently shows that Mr. Baker is wealthy, has been paying Lake Shore Limited's bills,

and has orchestrated the current intolerable situation. In these circumstances, the court finds that

it is appropriate to require Lake Shore Limited and Mr. Baker to reimburse the CFTC and the

receiver for the actual expenses caused by their contumacious conduct.

Accordingly, the CFTC is awarded costs, payable jointly and severally by Lake Shore

Limited and Mr. Baker from non-investor funds, for all expenses actually incurred due to the

refusal to comply with the preliminary injunction and receivership orders. Similarly, the receiver

is awarded costs, payable jointly and severally by Lake Shore Limited and Mr. Baker from non-

investor funds, for all expenses actually incurred due to the refusal to comply with the

receivership order. Neither the CFTC or the receiver have submitted a formal request for fees substantiating the amounts they have requested. They should seek guidance from the magistrate judge regarding the timing and form of any such requests as the requests for an award of a specific amount of fees is within the scope of the referral to the magistrate judge.[8]

## C. Non-Monetary Sanctions

The CFTC seeks an order barring Lake Shore Limited from introducing any of the documents covered by the preliminary injunction order or making any arguments based on those records unless and until Lake Shore Limited complies with the preliminary injunction order.[9] Lake Shore Limited's strategy at the preliminary injunction hearing, which offered a prime opportunity to introduce any evidence that might support its position, was that the best defense is a good offense. Thus, it largely attacked the CFTC's evidence via arguments presented by its counsel. Indeed, throughout the preliminary injunction order, the court discussed Lake Shore Limited's decision not to point to any concrete evidence to support its cross-examination of the CFTC's witnesses.

---

[8] The court assumes that the CFTC and the receiver are coordinating their efforts and are not performing duplicative work in an effort to reconstruct Lake Shore Limited's records from investor and third-party records. The court trusts that the magistrate judge will consider this concern when reviewing the fee requests.

[9] The CFTC asks that this bar reach the documents identified in the preliminary injunction order and documents relating to the SMAs even though the preliminary injunction order expressly excluded the SMA documents. However, on November 4, 2007, the court held that Lake Shore Limited had no basis to withhold the SMA documents. Lake Shore Limited nevertheless has not produced any of these documents. Lake Shore Limited's refusal to produce the SMA documents thus violates a specific court order (the October 4, 2007 receivership order), but not the one identified by the CFTC.

To date, Lake Shore Limited has vigorously and aggressively refused to produce any documents, even in the face of numerous court orders from this court and the Seventh Circuit unequivocally requiring it to do so. It has also never tried to use its documents to defend itself and, in fact, chose contempt over compliance with the preliminary injunction and receivership orders. Thus, the CFTC's belief that a document bar will coerce compliance may well be unduly optimistic. Nevertheless, time will tell if the CFTC's confidence is misplaced. In the meantime, it would be fundamentally unfair for Lake Shore Limited to withhold its documents and then simultaneously try to use them for its own benefit (although the court doubts this situation would arise given Lake Shore Limited's past actions). Thus, Lake Shore Limited is barred from introducing any documents required to be produced under the preliminary injunction or receivership orders. It may purge itself of this order by complying with these orders.[10]

This brings the court to the CFTC's request that the court bar Lake Shore Limited from raising any arguments which are factually based on documents that should have been produced pursuant to the preliminary injunction order. Lake Shore Limited has previously offered speculation based on documents it has not produced and, more recently, has merely relied on the frivolous argument that the pendency of the preliminary injunction appeal excuses its actions. Barring Lake Shore Limited from offering additional unsupported arguments would not promote the goal of coercing compliance with the injunction order as arguments unsupported by evidence

---

[10] The CFTC suggests that the court make this bar permanent 90 days prior to any trial date. This request is denied without prejudice to renewal later, as the court's intent is to impose coercive civil contempt sanctions that can be purged. A permanent sanction has the potential to be punitive rather than coercive. Because the parties have not briefed this issue and it is unnecessary for present purposes to resolve it, the court declines to delve into the nuances of coercive versus punitive sanctions at this point in the proceedings.

are non-starters.  Thus, issuing this "sanction" would not coerce Lake Shore Limited into complying with the court's orders since it would merely maintain the status quo.  Because imprisonment does not appear to be currently feasible, the court turns to consideration of the appropriate level of monetary sanctions.[11]

### D.    Monetary Civil Contempt Sanctions

As noted above, when considering what civil contempt sanctions are appropriate, the court must balance the harm caused by the contemnors' noncompliance, the likelihood that a sanction will be effective, the contemnors' financial resources and the associated burden of the chosen sanctions, and the contemnors' willfulness in disregarding the court's orders.  *See South Suburban Housing Center v. Berry*, 186 F.3d at 854.

Characterizing Lake Shore Limited/Mr. Baker's financial resources as substantial and practically unlimited, the receiver contends that any fine imposed must be significant to have a realistic chance of coercing compliance.  The receiver thus suggests a fine of $25,000/day for a period of thirty days, to be reduced to a judgment of $750,000 if Lake Shore Limited and Mr. Baker fail to comply with the receivership order, followed by a series of escalating fines.  The CFTC suggests a fine of $1,000/day for seven days, followed by a fine of $5,000/day until Lake Shore Limited and Mr. Baker comply with the preliminary injunction and receivership orders.

---

[11]  As noted by the receiver, imprisonment is not a viable option at the present time as Mr. Baker's whereabouts are unknown.  After Mr. Baker's hasty departure from England following the sudden closing of Lake Shore's London office, his last reported address was in Germany.  However, the CFTC asked German authorities to attempt to verify this address, and they advised the CFTC that there were no indications that he ever had resided at the given address.  The court requests that at the upcoming status hearing, the CFTC and the receiver advise the court of the status of their efforts to locate Mr. Baker.

The court will, at this point, only consider imposing fines that can be purged, as these fines are clearly civil in nature and the court has not afforded the additional procedural protections necessary for criminal contempt proceedings. *See In re Grand Jury Proceedings*, 280 F.3d 1103, 1007 (7th Cir. 2002) (an order is coercive and civil in nature if the contemnor may purge his contempt by committing an affirmative act). In addition, to maximize the efficacy of its imposition of coercive sanctions, the court will impose a daily fine now for a short period of time and allow Lake Shore Limited and Mr. Baker to purge their contempt by complying with the court's orders. If this fails to have its desired effect, the court will evaluate what further actions are necessary. *See id*. at 1109 ("a continued [civil] contempt order could lose its coercive force if there were simply no reasonable possibility that the contemnor would ever comply with the court's demands").

The court will not repeat its detailed prior findings about Lake Shore Limited and Mr. Baker's pattern of resistance, their repeated intentional defiance of the court's orders, and the flagrant disregard that they have shown for the rights of the investors. This is an extremely serious situation that can come as no surprise to anyone who has read the court's prior orders. Nevertheless, even after this court found they were in civil contempt, and in the face of impending contempt sanctions and an appellate court order stating in no uncertain terms that Lake Shore Limited was in contempt of court based on its failure to comply with the preliminary injunction order, Lake Shore Limited and its principal, Mr. Baker, have remained obdurate.

They have not only refused to comply with court orders regarding document production, but also have refused to execute authorizations allowing the London FCM money to be turned over to the receiver for distribution to the investors. This is particularly egregious because that

money unequivocally belongs to investors (despite efforts by various Lake Shore entities controlled by Mr. Baker to seize this money for themselves). In short, given that the court is attempting to distribute the London FCM assets to their rightful owners, Lake Shore Limited's efforts to maintain control over the investors' money are extremely suspect.

The decision of Lake Shore Limited (via Mr. Baker) to refuse to turn over Lake Shore Limited's *own documents* is similarly offensive. None of Lake Shore Limited's foreign law or Commodity Exchange Act arguments apply to its own commodity pool operator ("CPO") and commodity trading advisor ("CTA") documents relating to the Lake Shore Alternative Financial Asset Funds. These documents, however, appear to be touring the world (from Canada to Bermuda and then onto Switzerland) in an effort to avoid disclosure.

The same can be said for the single U.S. investor: even accepting Lake Shore Limited's unduly restrictive view of its document production obligations, it concedes that it is required to produce complete records for this investor but has refused to do so while making no arguments on appeal regarding these records. *See CFTC v. Lake Shore Limited*, docket no. 118, at 73-75.

In a similar vein, Lake Shore Limited contends that the alleged duty to protect the investors' funds (from the investors themselves!) prevents any Lake Shore entity from authorizing the transfer of funds held at the London FCMs. The refusal to authorize the transfer of the London FCM funds to the receiver, however, indicates that there is a very real risk of dissipation. In addition, Lake Shore Limited/Mr. Baker have simply ignored the portion of the October 4th order requiring production of the SMA documents, even though this part of the order was not appealed and a protective order shielding the investors' personal information is in place.

These examples are illustrative and by no means cover the entire waterfront. Suffice it to say that given the Seventh Circuit's denial of Lake Shore Limited's requests for a stay pending appeal and the unequivocal nature of this court's orders, there can be only one appropriate action: immediate compliance. Yet, the situation today is no different than it was three months ago when the Seventh Circuit issued its September 7th order denying a stay pending resolution of Lake Shore Limited's appeal of the preliminary injunction order. In short, based on their past conduct, even the most inveterate gambler would not bet on the chance that Lake Shore Limited and Mr. Baker will have a voluntary change of heart and comply with the court's orders without an extremely weighty additional incentive to do so. The court thus does not believe that the CFTC's suggested fine of $1,000/day or $5,000/day will have any sort of meaningful coercive effect. For a multi-millionaire, such a fine would be insignificant. The court, indeed, harbors serious doubts that any fine, no matter how large, will have any coercive effect as long as Mr. Baker is able to keep his whereabouts unknown.

Accordingly, based on the court's intimate familiarity with this complex case, the history of egregious and intentional defiance exhibited by Lake Shore Limited and Mr. Baker, the evidence in the record about Mr. Baker's resources, and the burden that the chosen sanctions will have on Lake Shore Limited and Mr. Baker, the court finds in its discretion that the receiver's suggested fine of $25,000/day is both reasonable and necessary. Based on the specific facts of this case and Mr. Baker's extensive personal assets, a lesser fine would simply not exert the desired coercive effect. *See In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 821 (11th Cir. 1984) (affirming imposition of a $25,000/day fine that led to a total fine of $1,825,000 against a bank held in civil contempt for its willful failure to comply with a grand

jury subpoena seeking records).[12]  These sanctions are payable jointly and severally by Lake Shore Limited and Mr. Baker out of non-investor funds and will continue to accrue until Lake Shore Limited and Mr. Baker comply with the preliminary injunction and receivership orders. The receiver shall hold any monies paid by Lake Shore Limited and/or Mr. Baker for potential pro rata distribution to the investors if the contempt is not purged.[13]

Lake Shore Limited and Mr. Baker may purge their contempt by complying with the preliminary injunction and receivership orders.  If Lake Shore Limited and Mr. Baker's present and unfortunate pattern of pertinacious behavior persists and they fail to comply with the preliminary injunction and receivership orders, the court will impose additional contempt sanctions.  Lake Shore Limited must, and the CFTC and receiver may, file status reports regarding any progress (or the lack thereof) made in response to this order.  Status reports are due by no later than December 14, 2007, at 12:00 noon and December 21, 2007, at 12:00 noon. Based on the December 21st status report, the court will determine what further actions, if any, are warranted.

_____

[12]  If Mr. Baker has dissipated a substantial portion of the monies at Hanford and elsewhere – which appears unlikely given the amount of money held by Hanford – the sanction will have an even greater coercive effect.  Given Lake Shore Limited and Mr. Baker's refractory behavior to date and the fact that they can obviate the need to pay any sanctions at all by complying with the court's orders as they were required to do months ago, the court adheres to its belief that its chosen sanction is appropriate and warranted in this case even if Mr. Baker has spent down some of his very substantial assets.

[13]  This would be particularly appropriate if the CFTC prevails on its claim that Hanford, which appears to be a primary source of financial support for Mr. Baker, turns out to be part of the Lake Shore Common Enterprise.

## III.  Conclusion

The court previously found that Lake Shore Limited and Mr. Baker are in civil contempt of the preliminary injunction and receivership orders.  For the reasons set forth above, the court imposes the following coercive civil contempt sanctions:

(1)    Lake Shore Limited is barred from introducing any documents subject to the preliminary injunction or receivership orders;

(2)    With respect to compensatory sanctions, the CFTC is awarded costs, payable jointly and severally by Lake Shore Limited and Mr. Baker from non-investor funds, for all expenses incurred due to the refusal to comply with the preliminary injunction and receivership orders.  In addition, the receiver is awarded costs, payable jointly and severally by Lake Shore Limited and Mr. Baker from non-investor funds, for all expenses incurred due to the refusal to comply with the receivership injunction order.  The CFTC and the receiver should seek guidance from the magistrate judge regarding the timing and form of their fee petitions;

(3)    Lake Shore Limited and Mr. Baker are jointly and severally liable for civil contempt sanctions of $25,000/day, payable out of non-investor funds.  These sanctions shall begin to accrue beginning the second day after the entry of this order on the court's docket.

(4)    Lake Shore Limited and Mr. Baker may purge their contempt with respect to the daily fine and document bar by complying with the preliminary injunction and receivership orders.  However, regardless of whether they purge their contempt, they shall remain liable for the compensatory sanctions awarded to CFTC and the receiver;

(5)    Lake Shore Limited must, and the CFTC and receiver may, file status reports regarding any progress (or the lack thereof) made in response to this order.  Status reports must be filed by no later than December 14, 2007, at 12:00 noon and December 21, 2007, at 12:00 noon.  Based on the December 21st status report, the court will determine what further action, if any, is warranted.


DATE:  December 10, 2007

Blanche M. Manning
United States District Judge

-23-

As detailed in the attached order, Lake Shore Limited is barred from introducing documents subject to the preliminary injunction or receivership orders. The CFTC and receiver are awarded actual expenses incurred due to the refusal to comply with these orders. Beginning the second day after the entry of this order on the court's docket, Lake Shore Limited and Mr. Baker are jointly and severally liable for civil contempt sanctions of $25,000/day, payable out of non-investor funds. Lake Shore Limited must, and the CFTC and receiver may, file status reports regarding any progress (or the lack thereof) made in response to this order. Status reports must be filed by no later than 12/14/07, at 12:00 noon and 12/21/07, at 12:00 noon. Based on the December 21st status report, the court will determine what further action, if any, is warranted.