**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES COMMODITY** | ) | |
| **FUTURES TRADING COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **07 C 3598** |
| | ) | |
| **LAKE SHORE ASSET MANAGEMENT** | ) | |
| **LIMITED, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

William Nissen is a partner at the Chicago law firm of Sidley Austin and is former counsel for defendant Lake Shore Asset Management Limited. The court previously observed that "there is a fine line between, on the one hand, a party's pursuit of a particular position and vigorous advocacy from that party's lawyer and, on the other hand, obstructionism. Lake Shore Limited and its lead counsel, William Nissen, may well find that they have landed far on the wrong side of this line." The court then issued a rule to show cause directed at Lake Shore Limited and Mr. Nissen. The rule to show cause against Mr. Nissen has been fully briefed and is presently before the court. The court also held a hearing to discuss the sanctions issue, afforded counsel an opportunity to present argument, and allowed counsel to file supplemental memoranda following oral argument.

## Background

The court begins by noting that it takes its obligation to promote civility and collegiality between the bench and bar very seriously. The court issued the rule to show cause against Mr. Nissen and prepared this opinion after a great deal of reflection. Zealous advocacy is laudable, but at a certain point can turn into conduct that strikes at the heart of the court's core function of

resolving disputes. The court thus regrets the need to issue this opinion, but does so because it cannot turn a blind eye to conduct that negatively impacts its ability to promote the orderly administration of justice and resolve disputes fairly. *See In re Cooper*, 821 F.2d 833, 843 (1st Cir. 1987) ("A judge who believes misconduct has occurred has a responsibility to act. If counsel oversteps his bounds, delay in issuing warnings or taking action may lead to matters getting further out of hand . . ."). With that said, the court turns to the question of whether Mr. Nissen should be sanctioned under Fed. R. Civ. P. 37(b)(2), 28 U.S.C. § 1927, and the court's inherent powers. In doing so, the court assumes familiarity with the record and will discuss specific facts in chronological order as necessary below.

## Standard of Review

Under Rule 37(b)(2), the court may order "the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure." In addition, 28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." When deciding whether an attorney should be sanctioned under § 1927, the court must consider whether an attorney's conduct was objectively unreasonable. *See Claiborne v. Wisdom*, 414 F.3d 715, 721-22 (7th Cir. 2005) ("this court has upheld § 1927 sanctions . . . [when] counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders").

The court may also impose attorney sanctions under its inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Based on these inherent powers, the court may sanction counsel for "willful disobedience of a court order" or "bad faith conduct." *Schmude v. Sheahan*, 420 F.3d 645, 649-50 (7th Cir. 2005), *quoting Chambers v. NASCO, Inc.*, 501 U.S. at 45-46 (internal citations omitted). "Because these inherent powers are potent, they must be exercised with caution and restraint." *Id.* The exercise of restraint, however, does not mean that the court must ignore "irresponsible advocacy falling below minimum professional standards and deserving of penalty." *Lepucki v. Van Wormer*, 765 F.2d 86, 87 (7th Cir. 1985) (per curiam).

### **Events Following Lake Shore Limited's Appeal from the Statutory Injunction**

On June 7, 2007, this court granted the CFTC's request for a statutory restraining order freezing Lake Shore's assets. *See* 7 U.S.C. § 13a-1. On August 2, 2007, the Seventh Circuit issued a typescript opinion finding that the Federal Rules of Civil Procedure applied to requests for statutory restraining orders issued pursuant to the Commodity Exchange Act and concluding that "[t]he ex parte order is vacated. The mandate will issue immediately." *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, 496 F.3d 769, 773 (7th Cir. 2007). The mandate issued later that afternoon.

During this time period, unbeknownst to the court, the National Futures Association ("NFA"), which is not a party to this action, was working to freeze Lake Shore's assets via a completely different route by filing a member responsibility action ("MRA"). *See* NFA Compliance Rule 3-15.[1] In the MRA, the NFA alleged that Lake Shore had violated NFA

---

[1] It is unclear why none of the lawyers in this case told the court about the NFA member responsibility action prior to the issuance of the NFA asset freeze order, given that the preliminary injunction sought to freeze the very same assets at issue in the NFA action. *See*

record-keeping rules and instructed all NFA members to institute an asset freeze on assets owned and controlled by Lake Shore pending resolution of the alleged violations.[2] The NFA ultimately issued an asset freeze on August 6, 2007. *In re Lake Shore Asset Management Ltd.*, No. 07-MRA-007 (Aug. 6, 2007).

The court learned of the MRA and the NFA asset freeze on August 6, 2007, when Lake Shore Limited filed an "emergency motion to enforce mandate" with this court. The motion asserted that the NFA administrative action – which Lake Shore Limited had previously never mentioned to either this court or the Seventh Circuit – had been issued in violation of the Seventh Circuit's opinion. Lake Shore Limited's position appeared to be premised on the belief that the Seventh Circuit's statement that "there is no apparent reason why all of these businesses must be shut down" while the parties' dispute is being resolved, *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, 496 F.3d at 773, meant that this court was required to vacate the NFA asset freeze.

The motion to enforce the mandate filed with this court did not indicate that the MRA was a separate administrative proceeding directly appealable to the Seventh Circuit. Instead, it characterized the NFA asset freeze as an unlawful effort by the CFTC to avoid the Seventh

_____

*Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067-68 (7th Cir. 2000), *citing Tiverton Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) ("[c]ounsel have a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation"). In this respect, points go to Mr. Nissen, who was the first to reveal it, even though he did so in a less than ideal way, as described later in the text.

[2] The NFA's asset freeze remains in effect. In addition, this court's preliminary injunction order also included an asset freeze covering the same assets. The Seventh Circuit recently rejected Lake Shore Limited's attempt to have both of those asset freezes lifted. *Lake Shore Asset Management Ltd. v. Commodity Futures Trading Com'n*, 511 F.3d 762 (7th Cir. 2007).

Circuit's order.  Also on August 6th, the CFTC filed a motion for a temporary restraining order (*Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 64) and a motion for a preliminary injunction (*id.* at Docket No. 65) with this court based on new allegations of fraud.

The court held a hearing on Lake Shore Limited's motion to enforce the mandate on August 7th.  During the hearing, the CFTC handed the court a response to Lake Shore Limited's motion to enforce the mandate.  At the conclusion of the hearing, the court declined to rule from the bench, retired to chambers, and began to prepare a written order to ensure that the record clearly reflected the basis for its decision.  Simultaneously, dissatisfied with the court's refusal to rule in its favor from the bench without reading the CFTC's response or conducting any research in light of counsels' arguments, Mr. Nissen prepared an emergency motion which he filed with the Seventh Circuit.[3]  Attached to this motion was the motion to enforce the mandate that he had filed with this court as well as the CFTC's response, which the court had received during the motion hearing.

The motion to enforce the mandate filed with the Seventh Circuit suggested that this court had affirmatively refused to rule on the motion to enforce the mandate.[4]  It also referred to the

_____

[3]  This pleading was filed with the Seventh Circuit, not this court.  Nevertheless, the court believes it is appropriate to comment on it as it was based on actions allegedly taken by this court.

[4]  The motion filed with the Seventh Circuit indicated that this court had declined to specify a ruling date for the motion to enforce the mandate.  Counsel stresses that this is literally true, so he is not responsible for the Seventh Circuit's belief that this court did not intend to rule on the motion in an expeditious fashion.  This argument is sophistry:  if a ruling from this court was imminent, there would be no reason to file a renewed emergency motion with the Seventh Circuit without first waiting for this court to rule.  The only conclusion to be drawn from the timing of the appellate motion and the representations contained in that motion is that this court

CFTC's new allegations of fraud raised in its motions for a temporary restraining order and preliminary injunction. Mr. Nissen was aware that the court and Magistrate Judge Mason were working with their schedules to ascertain who could fit in a prompt hearing on the CFTC's request for injunctive relief. He was also aware that the CFTC had filed a motion for a temporary restraining order and a motion for a preliminary injunction based on the new fraud allegations and that the court understood that a full evidentiary hearing would be held with respect to these allegations. *See, e.g., Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Transcript of Proceedings, August 7, 2007, at 24-25 (stating "Well, we'll set this for a hearing on the preliminary injunction" in connection with what the CFTC had characterized as a motion for a temporary restraining order).

He nevertheless intimated that this court was willing to postpone a preliminary injunction hearing indefinitely. He also characterized the MRA as an action taken by the CFTC in an effort to avoid the Seventh Circuit's opinion[5] and did not address whether this court had the authority to issue an opinion reversing an interlocutory order issued by the NFA, despite an inquiry from the court.[6] *See id.* at 26.

_____

had refused to decide the motion before it. In fact, however, the court merely declined to instantly rule from the bench in favor of Lake Shore Limited without first reading the CFTC's opposition or reviewing any authority. *See Spangler v. Sears, Roebuck and Co.*, 759 F.Supp. 1327, 1333 (S.D. Ind. 1991) (decisions must be rendered "as quickly as accuracy allows").

[5] Counsel today claims that his contention that the NFA's MRA was actually an action taken by the CFTC to avoid the Seventh Circuit's opinion was factually accurate. At best, this was an aggressive argument based on facts susceptible to differing constructions. The NFA is not the CFTC. Moreover, the NFA is charged with, among other things, addressing alleged commodity fraud, so its MRA could easily have been due to its desire to carry out this mission.

[6] Ultimately, the Seventh Circuit held that the NFA order that was the subject of Lake Shore Limited's appeal was not an appealable order because "[c]ourts review final decisions, and

At the same time Mr. Nissen was filing his motion to enforce the mandate with the

Seventh Circuit, the court sent the following order to be docketed:[7]

> Motion hearing held on defendant's motion to enforce mandate of the Court of
> Appeals [#63]. Plaintiff's emergency motions for TRO/preliminary injunction
> based on fraud [#64/65] are entered and continued to 8/9/2007 at 9:00 a.m.,
> assuming that leave is granted to file an amended complaint [adding fraud
> allegations]. The court also notes that the TRO motion appears to be unnecessary
> in light of the imminent full evidentiary hearing. Plaintiff granted leave to file its
> brief in response to defendant's motion to enforce the mandate by 5:00 p.m. on
> 8/7/07. Defendant's motion to enforce the mandate is taken under advisement,
> and the court will rule very expeditiously. Defendant's response to plaintiff's
> request for injunctive relief shall be submitted to the court no later than 3:00 p.m.
> on 8/8/07.

_____

an agency's resolution of one legal issue – such as whether the NFA has the authority to freeze a
member's assets – is not a 'final decision' while other aspects of the proceeding are ongoing
before the agency." *See Lake Shore Asset Management Ltd. v. Commodity Futures Trading
Com'n*, 511 F.3d at 766.

[7] It can take up to one business day for orders to be docketed and e-mailed to registered
e-filers. The court had not yet adopted its current practice of e-mailing virtually all orders to
counsel at the time they are sent to be docketed as at this point, it was unaware that this was
necessary. However, it believed that it had instructed its clerk to email this particular order to all
counsel of record in light of the very short response time set for Lake Shore Limited to respond
to the CFTC's motion for a preliminary injunction. Mr. Nissen's filings indicate that he did not
receive an emailed copy of the order. The court's clerk does not retain email logs this far back,
but the court accepts Mr. Nissen's representation that he did not receive an emailed copy of the
order. Perhaps receipt of the court's scheduling order would have prevented Mr. Nissen from
renewing his motion to enforce the mandate with the Seventh Circuit. As the court previously
noted, the situation could also have been avoided if Mr. Nissen had chosen to provide the court
with a courtesy copy of his Seventh Circuit motion. *Commodity Futures Trading Com'n v. Lake
Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 87. Nevertheless, the court adheres to
its belief that counsel's actions with respect to the mandate – even without the benefit of the
order at issue – were exceptionally aggressive. They were also inconsistent with the realities of
litigating emergency motions at the district court level. The court cannot know exactly how long
it will take to prepare an order addressing an emergency motion, but its disinclination to specify a
precise time (which may not turn out to be accurate) should not cause counsel to initiate satellite
litigation.

*Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598,

Docket No. 78.

The court then turned to the Lake Shore Limited's motion to enforce the mandate without the knowledge that Lake Shore Limited had renewed that motion (which had not yet been ruled on) before the Seventh Circuit. As the court was finishing its order on August 8th (the day following oral argument on the motion) addressing Lake Shore Limited's motion to enforce the mandate, it received an order from the Seventh Circuit. This order reflected that the Seventh Circuit had grasped the inaccurate message that Mr. Nissen had tried to impart: that this court was not requiring compliance with the Seventh Circuit's mandate and, among other things, intended to hold an endless series of hearings on an endless series of motions for temporary restraining orders. *Lake Shore Asset Management Ltd. v. Commodity Futures Trading Com'n*, No. 07-2790 (7th Cir. Aug. 8, 2007) (unpublished order).[8]

---

[8] Today, counsel attempts to distance himself from the situation by stating that he does not know why the Seventh Circuit made the factual statements it did in its August 8, 2007, order. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 450 at 2-3. The court is unconvinced: in context, counsel's motion to enforce the mandate filed with the Seventh Circuit intimated that this court was allowing the CFTC to avoid complying with the Seventh Circuit's opinion addressing the statutory injunction. Counsel's motion was artfully drafted and used technically accurate statements to paint a misleading picture. For example, in the motion, counsel accurately noted that as of the August 7th hearing, the court had not stricken the CFTC's TRO motion based on fraud. Up to that point, however, the court was focusing on finding a date for a prompt evidentiary hearing on the new fraud allegations. With the wisdom of 20/20 hindsight (*i.e.*, with an appreciation of counsel's litigation strategy), the court now realizes it would have been preferable to immediately correct the CFTC by striking its new TRO motion as both duplicative of its new preliminary injunction motion and unnecessary (because the CFTC asked for relief based on a full evidentiary hearing). However, when the CFTC filed its motions for a TRO and preliminary injunction based on new fraud allegations, cleaning up the docket did not occur to the court given that the court and the parties all understood that a full evidentiary hearing would be held as to these allegations. In short, counsel used the pendency of the CFTC's TRO motion, out of context, to support a claim that this court was not heeding the Seventh Circuit's instructions. The Seventh Circuit understood

The Seventh Circuit's order clarified the obvious – that it had vacated the statutory injunction – and stated that it would enforce its rulings by issuing a writ of mandamus if necessary. *Id*. At this point, therefore, the Seventh Circuit had issued a ruling based on a filing from Mr. Nissen. Of course, however, without the benefit of a transcript (which Mr. Nissen did not attempt to obtain on an expedited basis) or a response from the CFTC, the Seventh Circuit would have no way of knowing that the summary of events provided by Mr. Nissen – an officer of the court – did not fairly represent what had occurred.[9]

Shortly thereafter, also on August 8th, the court issued two orders (Docket Nos. 87 & 90). These orders are largely reproduced below as they provide helpful background with respect to the merits of Lake Shore Limited's arguments about the scope of the mandate and the proceedings before this court. The first order set forth the relevant facts and stated:

> Lake Shore's motion to enforce the mandate is based on an overly broad understanding of the scope of the Seventh Circuit's mandate. On remand, a district court must follow the mandate of the appellate court, and the appellate court opinion sets forth the law of the case. *See, e.g., Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 493 (7th Cir. 1982). It has long been established that "[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168 (1939). Thus, this court must carefully read the Seventh Circuit's opinion to determine what issues are law of the case because they were decided expressly or by necessary implication. *Pincus v. Pabst Brewing Co.*, 752 F.Supp. 871, 873 (E.D. Wis. 1990), *citing Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979), and *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982).

---

this message. Counsel's argument today is thus rather reminiscent of a patron who falsely shouts "fire" in a crowded theater, *Schenck v. United States*, 249 U.S. 47, 52 (1919), and then professes surprise when his fellow theater patrons panic in response.

[9] Counsel correctly notes that he was not required to obtain a transcript. He was, however, required to fairly represent the proceedings before this court.

According to Lake Shore, the Seventh Circuit held that Lake Shore is entitled to immediate access to its funds and the Seventh Circuit's opinion thus requires this court to enjoin any action by any entity which seeks to freeze Lake Shore's assets based on any theory whatsoever. This court has carefully studied the Seventh Circuit's ruling. Clearly, the Seventh Circuit believed that the statutory restraining order under 7 U.S.C. § 13a-1 which froze Lake Shore's assets could not last more than twenty days. It thus vacated that order and directed this court to hold a prompt preliminary injunction hearing (the CFTC, however, subsequently withdrew its motion for a statutory preliminary injunction). Therefore, as matters currently stand, the Seventh Circuit's order prevents the CFTC from continuing to freeze Lake Shore's assets based on the statute that formed the basis of the now-vacated statutory restraining order.

However, Lake Shore did not argue, and the Seventh Circuit did not consider, the propriety of the NFA's prior institution of an asset freeze based on NFA Compliance Rule 3-15. Instead, the Seventh Circuit held that the statutory injunction was improper because it lasted for more than twenty days and noted in dicta that "there is no apparent reason" why Lake Shore should not have access to its funds while the court hashes out the records dispute which caused the court to make findings which led to imposition of the now-vacated asset freeze. *CFTC v. Lake Shore*, No. 07-2970 at 5 (7th Cir. Aug. 2, 2007). This court cannot agree that the Seventh Circuit thereby ruled that Lake Shore automatically prevails if an entity seeks to freeze Lake Shore's assets based on a legal theory that was not presented to the Seventh Circuit.

Such a result would be particularly incongruous given that the NFA's asset freeze was in effect before the court granted the CFTC's request for a statutory injunction, yet Lake Shore never mentioned this key fact before this court or the Seventh Circuit when it briefed the statutory asset freeze. Lake Shore is thus responsible for this case's present procedural posture. The court also notes that Lake Shore's position, if adopted, would entitle it to immediate victory on the CFTC's upcoming motion for a preliminary injunction based on new allegations of fraud, which is presently scheduled to be heard on August 9, 2007. Indeed, Lake Shore acknowledged as much, stating at the argument yesterday on its motion to enforce the mandate that "it's the same TRO."

The court disagrees: although the CFTC sought an asset freeze in its motion for a statutory injunction as well as in its new motion for a preliminary injunction based on alleged fraud, the legal underpinnings of the motions are completely different. Indeed, the court does not even know the precise factual basis for the fraud preliminary injunction motion, since it has not yet held an evidentiary hearing on that motion. Similarly, although both the NFA and the CFTC want Lake Shore to produce records, the legal underpinning of the NFA's

asset freeze is NFA Compliance Rule 3-15, while the now-vacated CFTC asset freeze was based on a statutory injunction. In short, the Seventh Circuit's holding regarding the statutory injunction does not control the CFTC's pending request for an asset freeze based on alleged fraud or the NFA's prior institution of an asset freeze based on its interpretation of Rule 3-15 because the Seventh Circuit's opinion did not decide these issues expressly or by necessary implication. Thus, the court finds that neither the NFA asset freeze nor the upcoming CFTC fraud TRO seeking an asset freeze are within the scope of the Seventh Circuit's opinion addressing the statutory injunction previously entered by this court.

This brings the court to Lake Shore's arguments regarding this court's ability to enjoin the NFA and the merits of Lake Shore's contentions about the propriety of the NFA's asset freeze. Although unremarked by the parties, in response to an inquiry from the court during oral argument on the motion to enforce the mandate, the parties agreed that at the conclusion of the administrative review process, an aggrieved party may file a petition for review with a federal court of appeals. *See* 7 U.S.C. § 21(i)(4) ("Any person aggrieved by a final order of the Commission entered under this subsection may file a petition for review with a United States court of appeals in the same manner as provided in Section 9 of this title"); 7 U.S.C. § 9 (review of final orders of the CFTC lies with the United States court of appeals of the circuit in which the petitioner is doing business); *Clark v. Commodity Futures Trading Com'n*, 170 F.3d 110, 113 (2d Cir. 1999) (7 U.S.C. § 21(i)(4) gives the courts of appeals jurisdiction over appeals based on "actions taken by entities known as registered futures associations" and "only one organization, the National Futures Association, ... has ever been designated a registered futures association").

Lake Shore has not provided any basis – other than the scope of the mandate argument addressed above – under which a district court may consider a request to waive the exhaustion requirement and review the NFA's decision. This is a threshold issue which must be resolved in Lake Shore's favor before this court may proceed further with respect to the merits of the NFA's asset freeze order. Accordingly, if Lake Shore wishes to proceed before this court regarding the NFA's asset freeze, it must file a brief memorandum addressing the court's jurisdiction to consider this issue. If Lake Shore does so, the court will consider this issue on an expedited basis.

*Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598,

Docket No. 90.

This court's second August 8th order – the second court order at this point addressing events that had not transpired (*i.e.*, the court's alleged refusal to rule on Lake Shore Limited's motion to enforce the mandate and to comply with the Seventh Circuit's opinion) – provided that:

> On August 8, 2007, the Seventh Circuit issued an order in response to a motion filed by Lake Shore on August 7, 2007, with the Seventh Circuit entitled "Emergency Motion to Enforce Mandate of the Court of Appeals." In this order, the Seventh Circuit repeated Lake Shore's assertion that this court believed that the statutory injunction was still in effect. The Seventh Circuit also appears to have believed that this court did not intend to resolve Lake Shore's district court motion to enforce the mandate in an expeditious fashion.

> The court has reviewed Lake Shore's August 7th Seventh Circuit motion to enforce the mandate. Regrettably, the court must conclude that this filing flagrantly misrepresents what transpired at the hearing before the court yesterday. Indeed, had Lake Shore provided this court with a courtesy copy of its motion yesterday, the court could have issued a minute order quickly clearing up the misconceptions that counsel appeared to be laboring under. In short, the court heard oral argument yesterday and immediately began to prepare a written order resolving Lake Shore's emergency motion to enforce the mandate because the last time the court made findings on the record in this case (during the hearing on the statutory injunction), those findings did not appear to be presented to the Seventh Circuit. *See CFTC v. Lake Shore*, No. 07-2970 at 1-2 (7th Cir. Aug. 2, 2007) ("The judge did not explain her reasoning for issuing the order or the thinking behind the asset freeze in particular").

> As explained more fully in this court's order issued earlier today which addressed Lake Shore's motion to enforce the mandate filed with this court, the Seventh Circuit's order immediately dissolved the statutory restraining order issued by this court so the asset freeze flowing from the statutory injunction was no longer in effect as of the moment that the mandate issued. As things turned out, however, the Seventh Circuit opinion did not signal complete victory for Lake Shore due to a separate asset freeze previously secured by the National Futures Association ("NFA") via a decision that appears to be appealable ultimately to the Seventh Circuit. *See* 7 U.S.C. § 21(i)(4) ("Any person aggrieved by a final order of the Commission entered under this subsection may file a petition for review with a United States Court of Appeals in the same manner as provided in Section 9 of this title"); *Clark v. Commodity Futures Trading Com'n*, 170 F.3d 110, 113 (2d Cir. 1999) (7 U.S.C. § 21(i)(4) gives the courts of appeals

jurisdiction over appeals based on "actions taken by entities known as registered futures associations" and "only one organization, the National Futures Association, ... has ever been designated a registered futures association"); 7 U.S.C. § 9 (review of final orders of the CFTC lies with the United States court of appeals of the circuit in which the petitioner is doing business). Regardless of whether this action was taken by the NFA or, as Lake Shore suggests and the CFTC disputes, taken by the CFTC via its cat's paw, the NFA, this court does not appear to be the right forum to consider the merits of the NFA's order and whether Lake Shore must exhaust its administrative remedies before seeking relief before the Seventh Circuit. *See id.*

In other words, Lake Shore is conflating two totally different asset freezes: the statutory injunction which was dissolved by the Seventh Circuit and the NFA/CFTC "Notice of Member Responsibility Action" ("MRA"). The court has expressed its willingness to consider any authority indicating that it has jurisdiction to rule on the MRA asset freeze, and assures the parties that it will consider any such authority in as expeditious manner as possible. There is no further action this court can or ever anticipated taking regarding the dissolved statutory injunction, which was not only vacated by the Seventh Circuit but also is no longer pending in any form since the motion for a statutory preliminary injunction was recently withdrawn by the CFTC. This court is also deeply troubled by Lake Shore's representation to the Seventh Circuit that this court believed that the statutory restraining order was still in effect or, even worse, that this court was flouting the Seventh Circuit's opinion by attempting to enforce an order that had been unequivocally dissolved.

Moreover, while the court understands Lake Shore's frustration with the current situation, it does not read the Seventh Circuit's opinion and subsequent order as requiring this court to enjoin any action by any entity which seeks to freeze Lake Shore's assets based on a theory other than the statute forming the basis for the now-vacated injunction. This is especially true given that the theory currently espoused by Lake Shore appears to be one that the Seventh Circuit has exclusive jurisdiction to consider. In short, this court understands that it is obligated to faithfully carry out the Seventh Circuit's pronouncements, but this means that it must discharge the Seventh Circuit's instructions as they are written, not as a party wishes them to be. If the Seventh Circuit meant its order to cover the NFA issue, which was first presented in federal court after the Seventh Circuit issued its August 2d decision, the court hopes that the Seventh Circuit will make its wishes known. From the court's careful study of the Seventh Circuit opinion, however, there is no basis to conclude that the opinion covered the NFA issue.

The court also feels compelled to address two other matters. First, the court's unwillingness to specify an exact time of day for an expedited ruling

which will issue as soon as possible does not mean that it has refused to issue a ruling as Lake Shore suggested to the Seventh Circuit. Instead, it means that the court cannot know to the second how long it will take to complete an opinion. Second, the CFTC's present motion for a temporary restraining order and a preliminary injunction against Lake Shore based on a wholly new ground (fraud) is more properly only a motion for a preliminary injunction since the court has scheduled a full evidentiary hearing commencing tomorrow.

*Id*. at Docket No. 87.[10]

The trial and appellate court orders based on Mr. Nissen's mischaracterization of the August 7th hearing continue to this day, as the Seventh Circuit quoted its August 8th order addressing this court's purported refusal to comply with the Seventh Circuit's opinion in full in its opinion addressing Lake Shore Limited's appeal from the preliminary injunction. *Lake Shore Asset Management Ltd. v. Commodity Futures Trading Com'n*, 511 F.3d at 763-64. This brought the total of court orders/opinions addressing something that did not occur to three. This opinion brings the count to four.

Mr. Nissen has extensive experience litigating commodities cases. At the time he filed his motion to enforce the mandate, the court thought that his reading of the Seventh Circuit's opinion addressing the statutory injunction was objectively unreasonable.[11] The court also was

_____

[10] This order (No. 87) issued very shortly after the order denying Lake Shore Limited's motion to enforce the mandate (No. 90). Because the orders were issued so close together, they were in the same pool of orders to be docketed and thus by happenstance ended up on the docket in reverse order.

[11] Today, in response to the rule to show cause, counsel repeats his argument that the NFA asset freeze frustrated the spirit of the mandate and thus was covered by the Seventh Circuit's opinion. In support, he notes that the Seventh Circuit did not expressly reject this argument. The court remains unconvinced that a Seventh Circuit opinion addressing a procedural issue (whether a statutory injunction is subject to Rule 65's timing rules) also required this court to unfreeze Lake Shore assets based on an entirely unrelated theory that had not been presented to any federal court prior to the issuance of the mandate. Counsel was entitled to make this argument, but would have been well served to clearly present it to this court, address the

-14-

troubled by his failure to address the court's jurisdiction to grant the requested relief at the time he filed his motion to enforce the mandate. Nevertheless, the court has no desire to chill vigorous advocacy and thus was willing to give counsel the benefit of the doubt and consider whether jurisdiction was proper and whether his client was entitled to the requested relief. But that was not enough for Mr. Nissen: perhaps realizing that his motion would not lead to the desired result, he turned to what the court can only characterize as misrepresentations.

Mr. Nissen, as a partner at Sidley Austin practicing law for over thirty years and specializing in commodities law, either knew or should have known that a federal statute provided that the appellate court was the proper venue for a challenge to the NFA's asset freeze. *See* 7 U.S.C. § 21(i)(4); 7 U.S.C. § 9; *Clark v. Commodity Futures Trading Com'n*, 170 F.3d 110, 113 (2d Cir. 1999). Even if his current claim that the court was authorized to overlook § 21(i)(4) is correct (an issue which the court need not reach), he also should have known that the court's first inquiry is always whether it has jurisdiction to grant the requested relief.[12] Yet, he

_____

court's jurisdiction in his motion, and give the court a chance to rule in the first instance before filing a renewed motion with the Seventh Circuit. Counsel's litigation strategy at best was not a model of clarity. At worst, it was an artfully drafted effort to expand the Seventh Circuit's holding based on a creative presentation of certain aspects of the proceedings below without addressing the jurisdictional questions raised by the court during oral argument on the motion to enforce the mandate.

[12] To the extent that counsel addressed jurisdiction, he did so well after the fact in a motion for joinder which he withdrew after the court issued an order questioning standing. The court also notes that counsel's claim that a district court (as opposed to an appellate court) may review NFA decisions is inconsistent with 7 U.S.C. § 21(i)(4), which provides that review lies with the United States Court of Appeals. Normally, when a statute confers jurisdiction on the appellate court, this court would expect to see the issue of whether a district court had jurisdiction prominently featured in the party's brief. Is it sanctionable not to do so? The issue before the court today is not whether counsel can justify his actions months later in response to a rule to show cause, it is whether counsel acted properly in the first instance. Counsel did not address 7 U.S.C. § 21(i)(4) in the motion to enforce the mandate and did not clarify his alleged

did not address this critical issue, despite questions asked from the bench by this court about its ability to consider a request to vacate an NFA order. Instead, he filed a pleading with the Seventh Circuit designed to create the impression that this court believed that the statutory restraining order was still in effect. The court adheres to its belief, stated in its August 8th order, that Mr. Nissen's filing with the Seventh Circuit "flagrantly misrepresent[ed]" the facts. *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 87.

It concludes this section by reiterating that there are now no fewer than four orders/opinions flowing from Mr. Nissen's exceptionally aggressive effort to make his client's appeal from the statutory restraining order cover every possible theory for freezing Lake Shore's assets. It is well established that federal courts are charged with ruling on actual controversies, as opposed to issuing advisory opinions about hypothetical events. *See, e.g., Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 488 (7th Cir. 2004) (the case and controversy requirement in Article III of the Constitution "ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes"). The court continues to be disturbed by the fact that the mandate incident caused scarce judicial resources to be diverted from far worthier causes (*i.e.*, actual controversies accompanied by advocacy analyzing the applicable law and facts).

―――――――――――――――――

reliance on the court's ability to issue declaratory relief during oral argument, despite the court's questions. Instead, he contended in a subsequent motion, filed after the motion to enforce the mandate had been denied, that this court had the power to issue declaratory relief. The failure to address jurisdiction in the first instance strikes the court as either remarkably ill-advised or highly suspect.

Moreover, counsel is welcome to advance whatever arguments he deems fit, but only to the extent that those arguments are based on a colorable view of the record. Counsel's exceptionally aggressive advocacy is also very problematic in the context of an emergency motion filed with an appellate court, as the appellate court must necessarily (and is entitled to) rely on counsel's summation of what transpired below. The court said it before, and it will say it again: it "understands that it is obligated to faithfully carry out the Seventh Circuit's pronouncements, but this means that it must discharge the Seventh Circuit's instructions as they are written, not as a party wishes them to be." *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 87.

The corollary to this is that an attorney must take the facts as they are, not as he wishes them to be. The orderly and fair administration of justice demands this, and to offer less is disrespectful of the judicial process and at odds with the bedrock principle that cases must be decided on their merits. *See Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (the court may impose § 1927 sanctions if "an attorney acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without a plausible legal or factual basis and lacking in justification; or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound") (internal quotations and citations omitted); *see also Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006).

## The Preliminary Injunction and the Appeal From that Order

Proceeding chronologically, the court next touches on Mr. Nissen's defense of the CFTC's motion for a preliminary injunction. The following examples paint a picture of an

attorney who appeared to be willing to advance arguments without regard to evidence in the record and to jettison procedural rules as necessary to advance his client's cause. The court has never before encountered an attorney whose litigation strategy was to obfuscate at all costs, regardless of the record and without any regard to logic or consistency. Individually, these instances are not necessarily sanctionable. When viewed against the backdrop of this case, however, they create a very disturbing picture.

The court first found itself in the exceptionally novel position of having to repeatedly ask an attorney in a complex financial fraud case to file longer briefs. First, counsel filed a three-sentence response to the CFTC's motion for a preliminary injunction. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 91 (noting that with respect to Lake Shore Limited's three-sentence response to the CFTC's 36- page motion for a preliminary injunction. "brevity is laudable, [but] it can be carried too far. Lake Shore's filing is unhelpful and insufficient"). The court accepts counsel's representation that he received the order calling for a response on the same day the response was due. While counsel was not required to mention this fact in his response, it would have been sensible to do so and to ask for additional time to submit a substantive response.

Counsel followed up this "brief" with a four sentence effort addressing an evidentiary issue. *See id*. at Docket No. 110 ("The court frequently confronts overly verbose briefs, but has never before received a series of briefs that are so remarkable for their extreme brevity and lack of substance (*e.g.*, this four-sentence effort [regarding evidentiary issues] and Lake Shore Limited's prior three-sentence response to the CFTC's motion for a preliminary injunction). The court appreciates the time constraints that counsel are laboring under, but these time restraints are

in place at counsels' request, counsel are from a very large firm, counsel filed their memorandum a day early, and it is counsels' obligation – not the CFTC's or the court's – to set out the relevant issues and justify their client's position with citations to supporting authority. The court thus strongly suggests that Lake Shore Limited abandon its practice of submitting cursory filings").

As counsel notes in response, short memoranda are not intrinsically improper. The court agrees, and appreciates all attorneys' efforts to cut to the chase. The question, however, is not whether a four-sentence discussion is inherently improper. Instead, it is whether this particular four-sentence discussion was improper. As the court noted in its five-page order addressing the evidentiary issues (in the plural) before the court, counsel's brief addressed a single evidentiary issue in an "unsupported, conclusory" fashion. *See id*. at 2. Specifically, the CFTC had identified a number of issues relating to the admission of two separate groups of exhibits. Lake Shore Limited's memorandum simply contended that declarations that do not contain the declarant's address or contact information are nevertheless admissible if they are sworn and signed (actually or electronically).[13] *Id*. at Docket No. 97.

Generally, a litigant who fails to raise arguments and support them with proper authority forfeits those arguments. *See, e.g., Weinstein v. Schwartz*, 422 F.3d 476, 477 n. 1 (7th Cir. 2005). Counsel may forfeit whatever arguments he wishes with impunity as that kind of advocacy is permissible. However, it is also dangerous. The court believed at the time that counsel was trying to say as little as possible in an effort to foster confusion in this very complex financial fraud case. The court commends the normal practice of submitting briefs setting forth a

---

[13] Mr. Baker's refusal to include his address in a declaration back in August of 2007 foreshadowed the current situation, as Mr. Baker's physical location continues to be unknown.

client's position and attempting to provide a comprehensive analysis of the facts and law in support to counsel's attention. The court also notes that Lake Shore Limited's four-sentence brief is additionally questionable because it was submitted after counsel was on notice (via the first order rejecting his three-sentence brief) that the practice of submitting cursory filings was unacceptable. This conduct in and of itself is not sanctionable, but is included to provide a complete overview of the nature of counsel's advocacy.

With respect to the CFTC's motion for preliminary injunction, Mr. Nissen again pushed the boundaries of vigorous advocacy by using conflicting factual allegations to support various arguments. For example, Lake Shore Limited argued that it was a trading advisor in support of one of its arguments, but then denied that it was a trading advisor in support of another one of its arguments.[14] Counsel's willingness to shift positions depending on the argument of the moment

---

[14] Today, counsel asserts that this argument is consistent, contending that he really meant that Lake Shore Limited (a CFTC registered trading advisor under the Commodity Exchange Act) was a trading advisor making trading decisions for the Lake Shore Funds, but was not always a trading advisor *as that term is used in the Commodity Exchange Act* making trading decisions for the Lake Shore Funds. Of course, Mr. Nissen's current explanation appeared for the first time in response to the rule to show cause. He previously argued that the Commodity Exchange Act did not reach activity relating to foreign investors, and never explained that this argument flowed from a contention that Lake Shore Limited was a trading advisor generally for those investors, as opposed to a trading advisor under the Act. The court questions the credibility of this explanation. Even with the 20/20 hindsight of knowing counsel's explanation, the court's re-review of counsel's filings indicates that counsel appeared to be shifting positions depending on whether it helped his client in connection with a particular argument, as opposed to shifting positions based on the distinction he draws today. In any event, the court declines to detour into the distinction currently espoused by counsel. The point is not whether such a distinction exists (a question that the court need not reach). Instead, it is whether a reasonable person reading counsel's prior filings and hearing his prior oral presentations would have understood that counsel was making this distinction. Clearly, neither the court nor the CFTC (all of whom are experienced litigators in this area) grasped that counsel was making this alleged distinction. Lake Shore Limited's status as a trading advisor and pool operator under the Act was a key issue, so counsel could and should have explained his alleged position better from the start.

gave his contentions an undesirable *Alice in Wonderland* quality as various facts faded in and out

of view like the Cheshire Cat's grin.  Needless to say, and as noted in the preliminary injunction

order, this litigation tactic did not advance his client's cause and diminished counsel's credibility

with the court.  *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*,

No. 07 C 3598, at Docket No. 118, at p. 56, n.8 (noting Lake Shore Limited's pressing of

factually inconsistent arguments and stating that "[t]he court feels constrained to note that this

type of shift in position (which is illustrative of Lake Shore Limited's litigation strategy to date

as opposed to an isolated incident) makes it difficult to rely on any factual representations made

by counsel.  The court does not make this comment lightly, and hopes that counsel takes it to

heart").[15]

> After the court ruled on the CFTC's motion for a preliminary injunction, Lake Shore

Limited appealed.  On August 30, 2007, Mr. Nissen orally argued Lake Shore Limited's motion

for a stay pending appeal before this court and did not offer any evidence in support of the

motion.  After the court ruled, on August 31, 2007, Lake Shore Limited renewed its motion for a

stay pending appeal with the Seventh Circuit.  This motion cited to and attached a new

declaration from Mr. Baker and did not disclose that the new declaration had not been presented

to this court.  *See id*. at Docket No. 192, at 2-3, n.2.

---

[15]  In this regard, the court notes that the rule to show cause stated that counsel's
inconsistent positions vis-a-vis Lake Shore Limited's status as a trading advisor was an
illustration, as opposed to an isolated instance.  The court, however, did not provide additional
examples in the rule to show cause.  Thus, it will not consider the merits (or lack thereof) of
other inconsistent factual positions adopted and then abandoned and then adopted again by
counsel according to the exigencies of the moment.

Fundamentally, appellate courts review decisions by trial courts. Thus, an appellate court necessarily cannot itself sit as a trial court and receive new evidence. This is why the record on appeal is limited to "the original papers and exhibits filed in the district court . . . the transcript of proceedings, if any" and a certified copy of the docket. Fed. R. App. P. 10(a) (defining contents of the record on appeal). It is also why, if a document is not included in the appellate record, counsel must file a motion with the trial court seeking to supplement the record. *See* Fed. R. App. P. 10(e); Cir. R. 10(b); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 798 at n.8 (7th Cir. 1997). Normal principles of appellate review do not contemplate a self-help remedy of simply submitting new evidence to the appellate court with no mention that the evidence was never presented below.

Counsel disagrees, and contends that Rule 8(a)(2) of the Federal Rules of Appellate Procedure allows the submission of new evidence to the appellate court. *See* Fed. R. App. R. 8(a)(2) (a motion for a stay pending appeal must include, among other things, "originals or copies of affidavits or other sworn statements supporting facts subject to dispute" and "relevant parts of the record"). According to counsel, if the affidavits needed to be part of the record below, the rule would not also refer to the submission of "relevant portions of the record." The court was under the impression that Rule 8(a)(2)'s authorization of the submission of evidence in support of a stay motion was meant to address emergency situations where materials submitted to the district court had not been processed by the clerk, or had not yet been sent to the appellate court by the district court clerk. *See* Practitioner's Handbook for Appeals at 42 (2003 ed.); *see also Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (under Rule 8(a), "the district court should have the opportunity to rule on the reasons and evidence presented in support of a stay, unless it

clearly appears that further arguments in support of the stay would be pointless" so to the extent that new evidence is submitted to the appellate court in support of a stay motion, it should be considered by the district judge prior to any action by the appellate court). This court's view of appellate practice is obviously not binding. The court nevertheless remains troubled by what appears to be yet another instance of playing fast and loose with the facts.

Today, Mr. Nissen states that he does "not believe that, under the circumstances, [he] had any obligation to tell the Seventh Circuit that this declaration had not been presented to the District Court, in light of the concern that has been expressed by the District Court, [he] now realize[s] that it would have been clearly preferable to do so and for that oversight, [he] apologize[s]." Nissen Declaration, *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 291, at 16-17. The court agrees that disclosure would have been clearly preferable. The declaration was certainly not a smoking gun, but the court expects more from a partner practicing for over thirty years at Sidley Austin. The declaration situation is yet another example of the general situation encountered by the court, as counsel repeatedly argued whatever facts were expedient at a given moment. It also illustrates the difficulties faced by this court as it evaluated counsel's filings and attempted to resolve motions in an orderly, precise, and factually correct fashion.

### Proceedings Following Entry of the Preliminary Injunction

The court next turns to the time period after the Seventh Circuit denied Lake Shore Limited's motion for stay of the preliminary injunction order pending resolution of its appeal. The court previously noted that Mr. Nissen, as an officer of the court, was obligated to refrain from engaging in evasive and dilatory tactics, but instead appeared to be trying to drag the

proceedings out as long as possible. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192 at 15. In response, counsel contends that he filed timely responses to all of the court's orders calling for briefs and is not responsible for his client's decision not to comply with the court's orders. He then concludes that he did not prolong the proceedings. Unfortunately, the record does not support this view.

### Foreign Bank Secrecy Laws

Mr. Nissen is correct in noting that he is not responsible for his client's refusal to comply with the court's orders regarding turnover of documents. However, he is responsible for the procedural situation he created, which is detailed below. Merely complying with the court's orders meant to sort out that situation does not absolve him from responsibility from creating the situation in the first place. Specifically, the reader may recall that Lake Shore Limited's refusal to produce its books and records was at the heart of the CFTC's motion for a preliminary injunction. In its response to that motion, Lake Shore Limited raised several arguments, but did not include any fall-back arguments. Thus, it never argued that if its arguments about the scope of the Commodity Exchange Act failed, it should nevertheless not be ordered to produce its books and records due to foreign bank secrecy laws.

After the court ruled on the CFTC's motion for a preliminary injunction and the Seventh Circuit denied Lake Shore Limited's motion for a stay pending appeal on September 7th, Lake Shore Limited was required to comply with the preliminary injunction immediately and thus was required to turn over its own books and records. Nevertheless, discovery remained at a standstill so on September 11, 2007, the court reminded Lake Shore Limited that "[i]n light of the Seventh Circuit's 9/7/07 order, Lake Shore Limited must allow immediate access to certain records . . . .

-24-

[T]o the extent that Lake Shore Limited believes that a legal theory entitles it to withhold certain information, it bears the burden of affirmatively bringing any such theory to the court's attention, as opposed to waiting for the CFTC to file a motion to compel." *See id*. at Docket No. 139.[16] The court also ordered briefing with respect to the SMA documents, as that issue was not resolved in the order ruling on the preliminary injunction motion.

Counsel, however, did not take any affirmative actions on behalf of his client, seek to withdraw due to his client's refusal to produce its own documents, or even acknowledge that the preliminary injunction imposed immediate obligations on Lake Shore Limited. Instead, on September 19th, 2007, Lake Shore Limited filed its memorandum regarding production of the SMA documents. This memorandum included the argument that the preliminary injunction order was improper because it required Lake Shore Limited to produce records of foreign funds and thereby violate foreign privacy and secrecy laws.

First, the court would be more predisposed to overlook counsel's failure to raise all his arguments about the documents in a single filing had he brought the foreign privacy law issue to the court's attention more promptly after the court issued the preliminary injunction order. Given that his client had an affirmative obligation to act immediately after the Seventh Circuit declined to stay this order, counsel's failure to seek a protective order or otherwise promptly bring the issue to the court's attention did not inure to his benefit. This is especially true given that counsel had already waited too long by failing to raise any such argument while the issue of

---

[16] The court issued this order in an effort to move the case along and compel Lake Shore Limited to promptly articulate any objections it might have. It was not blanket permission to raise untimely objections.

document production was on the table.  Instead, however, counsel appeared to be holding out until the last possible moment before raising this issue.

The proper time to marshal all of one's arguments in opposition to a motion for a preliminary injunction is in the response to that motion.  It is inefficient and a waste of the court's and parties' time and resources to allow a party to reload its brief-writing quiver after receiving an adverse ruling with arguments it omitted from its earlier efforts.  Under normal circumstances, the court would have rejected Lake Shore Limited's foreign bank secrecy law arguments for this reason.[17]  *See id*. at Docket No. 192 at 9-10 ("Given that Lake Shore Limited provided a detailed discussion of its foreign secrecy law argument to this court for the first time after the Injunction Order issued, Lake Shore's contention that the court is to blame for Lake Shore Limited's decision to withhold this argument until now is frivolous.  Indeed, it would have been more efficient to address all of the document issues at the same time"); *CFTC v. Lake Shore Asset Management Limited*, No. 07-3408 (7th Cir. Oct. 15, 2007) ("If, as Lake Shore maintains, laws of other nations set limits on its disclosures of books and records, that would have been a reason to write a different injunction (or an argument in support of a stay); it is not a reason to disobey an injunction actually issued, once this court denied the motion for a stay"); *see also Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997).

Despite Lake Shore Limited's untimely submission of its foreign secrecy law argument, however, the court was concerned about the potential for foreign civil or criminal proceedings

---

[17]  The court is aware that Lake Shore Limited previously raised these arguments in response to the CFTC's motion to compel, which the CFTC withdrew.  Regardless, however, these arguments did not appear in any of Lake Shore Limited's preliminary injunction filings, and the court is not required to hunt through the record to locate potentially applicable arguments found in prior pleadings responding to a withdrawn motion.

occasioned by requiring compliance with its orders.  On September 21, 2007, in the interests of justice and based on concerns about international comity, the court thus ordered briefing on the foreign bank secrecy law issue.  The court nevertheless noted that "Lake Shore Limited's decision to wait this long to raise its foreign bank secrecy law argument appears to be an attempt to further delay document production given that the court's August 28, 2007 order called for immediate production of certain documents."  *Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 153.  It also "strongly suggest[ed] that Lake Shore Limited re-read the portions of the court's injunction order addressing the difference between requiring Lake Shore Limited to produce its own documents in its role as the CTA and CPO for the Lake Shore Alternative Financial Asset Funds vs. requiring it to produce documents from the Funds themselves and act accordingly."  *Id*.

The court thus declined to find that the foreign secrecy law argument was forfeited, despite counsel's failure to raise it in a timely fashion.  The subsequent briefing of this issue extended the proceedings, albeit not in an egregious manner due to the short briefing schedule set by the court and the prompt issuance of a decision.  Clearly, however, it would have been more efficient to have addressed all of the arguments regarding document production at once.

In connection with the foreign bank secrecy argument, the court also notes that at this point, it had repeatedly differentiated between Lake Shore Limited's *own records* and records that could arguably be covered by foreign secrecy laws if they applied.  Nevertheless, when Lake Shore Limited raised its untimely foreign bank secrecy argument, it did not produce its own documents or even acknowledge that it had an obligation to do so.  Instead, at this point, besides the untimely foreign law argument, counsel's filings contained numerous previously rejected

arguments with no acknowledgment of the court's prior rulings or the obligation to produce Lake Shore Limited's own records. *See id.* at Docket No. 192 at 10-15 (listing previously-rejected arguments). This created the strong impression that counsel was ignoring the court's orders.[18]

### Review of SMA Documents

Counsel's response to the court's rulings about the SMA documents is a further example of a filing reflecting a refusal to accept the court's rulings. In the preliminary injunction order, the court held that it "declines to blindly accept Lake Shore Limited's statement that the SMA records are not subject to production. If Lake Shore Limited does not produce the records, the CFTC and the court have no way of knowing if Lake Shore Limited's position regarding non-production of these records is well-founded and the interests of justice cannot be served." *Id.* at Docket No. 118, at 58-59. Thus, it stated that relying on Lake Shore Limited's assertions with no means of review was off the table and offered Lake Shore Limited an opportunity to propose ways in which the basis for withholding the documents could be reviewed. Lake Shore Limited's subsequent filings simply repeated its contention – with no acknowledgment of the court's ruling – that it could withhold the SMA documents at its discretion with no means of review. *See id. at*

---

[18] The words of another court faced with a lawyer who represented a recalcitrant litigant and who appeared to be helping his client avoid compliance are apropos: "The Court agree[s] with plaintiffs that [the defendant] arrogantly treats each hearing before the Court as if it were nothing more than a dress-rehearsal for the next[,] and each adjudication by the court in thorough, detailed, and obviously time-consuming opinions and orders as if it was nothing more than a preliminary draft proposed by the Court for [the defendant's] review and comments, or the brief of another litigant, to be analyzed and somehow distinguished." *Gov't Guarantee Fund of the Republic of Finland v. Hyatt*, 182 F.R.D. 182, 185 (D.V.I. 1998). This case, however, presented an even more extreme situation as Lake Shore Limited's filings did not even acknowledge the existence of the court's prior rulings.

Docket No. 192 at 21-22. Once again, this created the impression that counsel was ignoring the court's orders. These examples are illustrative but by no means all encompassing.

***Discovery***

Discovery from Lake Shore Limited in this case has been at a virtual standstill since its inception and things did not improve after the court entered the preliminary injunction and appointed a receiver or after the Seventh Circuit issued its opinion in the preliminary injunction appeal. Once again, while counsel is not responsible for his client's actions, he is responsible for his own. Counsel now says that he could not make any records available because his client had decided not to produce them. He does not, however, provide any explanation regarding his position that Lake Shore Limited was not obligated to disclose the location of *any* Lake Shore records or describe the efforts being undertaken to preserve those records. *See New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460, 464 (N.D. Ill. 2007) ("Modern discovery practices seek to facilitate (however haltingly) open, even-handed, and efficient development of the relevant facts so that justice may be achieved and cases decided fairly on the merits. To that end, lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery").

Moreover, the court's review of the records and its recollection of the highly acrimonious document production situation shows that counsel was less than forthright about his client's position. Counsel would have been well-advised to have acknowledged the court's rulings or shown even a small degree of recognition as to his client's obligations. *See id*. However, counsel forged ahead, seemingly oblivious to these matters. *See Commodity Futures Trading*

*Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192 (order containing, among other things, a rule to show cause directed at Mr. Nissen detailing his actions).

### Anti-Suit Injunction

In its opposition to the CFTC's motion to appoint a receiver, Lake Shore Limited briefly contended that the appointment of a receiver would prevent Lake Shore entities from pursuing the British action and thus would be an improper antisuit injunction. The circuits are split and employ two approaches when reviewing anti-suit injunctions: the "strict" or conservative approach (followed by the First, Second, Third, Sixth, and District of Columbia Circuits) and the "lax" or liberal approach (followed by the Fifth, Seventh, and Ninth Circuits). *See Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359-60 (8th Cir. 2007). Lake Shore Limited's brief relied exclusively on cases from Circuits following the conservative approach and did not mention the approach followed by the Seventh Circuit or, indeed, that there were two approaches. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192 at 37 n.16 (noting Lake Shore Limited's failure to cite to cases utilizing the approach followed by the Seventh Circuit).

The failure to cite to controlling authority or acknowledge the approach followed by the Seventh Circuit demonstrates a regrettable lack of candor. *See In re Peachtree Lane Associates, Ltd.*, 188 B.R. 815, 824 at n.7 (N.D. Ill. 1995) ("Although *Klein* and *Klingman* provide [the debtor] with a good faith basis for argument, this Court regards [the debtor's] reliance on these cases without any mention, let alone discussion, of the numerous Seventh Circuit opinions discussed herein as disconcerting to say the least. Litigants and their counsel have a duty of

candor to the Court, which includes addressing relevant authority. This Court firmly believes that litigation in the federal courts ought not devolve into a game of hide the ball").

Today, counsel states that he did not personally conduct the research in the anti-suit injunction portion of his brief which was filed under his signature. As lead counsel and a member of the trial bar, counsel was nevertheless responsible for its contents. *See* Local Rule 83.55.1.[19] To the extent that a young, subordinate lawyer conducted the research at issue, the absence of Seventh Circuit authority setting forth the standard for consideration of the propriety of an anti-suit injunction should have struck Mr. Nissen as worthy of investigation. The lack of any Seventh Circuit or Supreme Court precedent in this section of Lake Shore Limited's brief certainly attracted the court's attention, and its research uncovered a body of on-point Seventh Circuit precedent. *See Zapata Hermanos Sucesores, S.A. v. Hearthside Banking Co., Inc.*, 2002 WL 221521, No. 99 C 4040 at *3 (N.D. Ill. Feb. 14, 2002) (with respect to the failure to cite to Seventh Circuit law, "there is really no excuse for a lawyer who holds himself out as an expert on a legal matter to be unaware of what even brief research would have disclosed"); *see also Hill v. Norfolk and Western Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987) (the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless").

---

[19] Presumably, the attorney responsible for the research from which Mr. Nissen seeks to distance himself is Sidley associate Steven Sexton, who was admitted to the Illinois bar in 2005. Mr. Sexton was also counsel of record for Lake Shore Limited, but Mr. Nissen was lead counsel, a member of the court's trial bar, and the author of Lake Shore Limited's litigation strategy. Mr. Sexton appears to have done an exemplary job of following Mr. Nissen's directions. This is why the court did not include Mr. Sexton in the rule to show cause, and instead directed it exclusively to Mr. Nissen.

Counsel also asserts that the portion of Lake Shore Limited's brief at issue was an attempt to provide "general illustrations" regarding anti-suit injunctions. The court did not read his brief that way, and a plain reading of the brief shows that counsel was arguing that any receivership order would act as an improper anti-suit injunction and citing to cases following the conservative approach.

Counsel next states that even though he was unaware of Seventh Circuit case law setting forth the Seventh Circuit's standards for anti-suit injunctions, the Seventh Circuit's position is really not all that different from the case law he did cite. If so, this is a happy coincidence, since counsel admits he did not consider this issue before signing and submitting his brief. The court's prior discussion of the Seventh Circuit's position on anti-suit injunctions, however, tells its own tale. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192 at 37-41; *see also Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1047 (7th Cir. 1989) (counsel should not ignore "arguably" or "virtually" dispositive cases "only later to argue that the omission was due to a scintilla of difference between the already decided cases and the one being litigated"). The anti-suit injunction situation shows yet again that cursory arguments in briefs, while not per se improper, are risky from an ethical standpoint.[20]

---

[20] As with counsel's other exceptionally short arguments – including a remarkably terse discussion of the Hague Convention's applicability to the production of documents located outside the United States – the court could easily have found that the nature of counsel's presentation meant that his client's arguments were forfeited. The court, however, was uncomfortable with simply ignoring substantive arguments and potentially issuing an incorrect decision based on forfeiture, especially given its concerns about international comity. It thus forged on despite Lake Shore Limited's cursory briefing of certain issues.

## Are Sanctions Warranted?

The problems in this case fall into two categories: (1) overly aggressive advocacy; and (2) the failure to acknowledge prior adverse rulings when allegedly raising these previously-rejected arguments to preserve the record. With respect to the scope of counsel's advocacy, the court has no desire to chill good faith advocacy. Nevertheless, counsel's conduct in this case was very disappointing. The court hopes that this opinion sheds light on the distinction between a vigorous defense and abuse of process.

A lawyer is an officer of the court and is supposed to present the facts and analyze the applicable law in the light most favorable to his client. This is not a mandate to engage in blatant gamesmanship or revisionist history. Instead, "[t]rue facts must be the foundation for any just result." *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). Lawyers are an integral part of the search for truth. In this regard, advocacy meant to distract, confuse, or obfuscate is unhelpful and inconsistent with an attorney's obligations as an officer of the court. In addition, advocacy based on factually misleading representations (*e.g.*, the mandate incident) subverts the search for justice. It also is an inappropriate use of limited judicial resources.

Similarly, attorneys who intentionally or recklessly disregard basic procedural rules do so at their own peril. Procedural rules govern lawyers' conduct as they work with the court so that it can determine cases fairly and accurately. Adherence to procedural rules also allows the court to move cases forward in an efficient and logical fashion. As discussed above, the court finds that much of counsel's advocacy in this case was overly aggressive and stepped over the line. Indeed,

at times, anarchy seemed to reign supreme despite the court's best efforts to move the case appropriately by setting short dates and issuing expedited rulings.

One of the most chronic examples of the unfortunate situation confronting the court was the seemingly constant repetition of previously rejected arguments and counsel's apparent insouciance in connection with the court's orders. Management of pending cases requires the court to set schedules and structure the progress of a case in a logical fashion. The constant repetition of rejected arguments hinders that process, as it keeps the case in a stagnant posture. This is what happened here – the court ruled, and then was back at square one when it received the next filing which contained the same arguments with no acknowledgment of the court's prior adverse ruling. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 192 at 17 (describing counsel as "the author of Lake Shore Limited's take-no-prisoners litigation strategy and proponent of any argument that advances Lake Shore Limited's desired result, regardless of whether the court has ruled definitively to the contrary").

"Half of all litigants (the losing half) may believe that the decision is incorrect, but it is essential to the operation of any legal system that unsuccessful litigants abide by the judgment unless they can persuade a higher court to set it aside." *In re Mann*, 311 F.3d 788, 789 (7th Cir. 2002). The same can be said for attorneys: they may believe that a decision is incorrect, and they are absolutely entitled to pursue all appropriate appeals and preserve the record as necessary. Nevertheless, they play with fire if they raise the same arguments over and over and fail to acknowledge prior adverse rulings.[21]  Moreover, to the extent that Lake Shore Limited's refusal

---

[21]  This principle is reflected throughout the CFTC's submission about its interactions with counsel. This document shows that the CFTC lawyers shared the court's frustration with counsel's refusal to acknowledge the court's rulings and his client's discovery obligations. The

to comply with the court's orders and meet its discovery obligations created an ethical dilemma for its counsel, this is something counsel needed to address head-on. Maintaining the status quo by repeating rejected arguments was not the right answer.

Today, counsel states that he repeated previously-rejected arguments to preserve the record since Lake Shore Limited had filed an interlocutory appeal. Counsel also states that he appreciated the obligations imposed by the court's rulings and did not intend to be disrespectful or defiant. Even the most generous reading of his filings, however, does not reflect this.[22] *See Serritella v. Markum*, 119 F.3d 506, 513 (7th Cir. 1997) (affirming sanctions imposed by district court who noted that "[c]ounsel must realize that the Court – every court – does its best to make correct decisions and, once made, counsel is expected to respect (hopefully gracefully) the decision and act accordingly"); *see also Magicsilk Corp. of New Jersey v. Vinson*, 924 F.3d 123, 125 (7th Cir. 1991) (sanctions against an attorney under Rule 37(b) are proper where an attorney directly failed to obey a discovery order of the court or advised or condoned his client's disobedience).

---

court reads the CFTC's filing as objecting to this practice, not to counsel's alleged desire to preserve the record for appeal.

[22] As an example of the type of apparent recalcitrance facing the court, the court directs the reader's attention to its request that the parties submit briefs discussing options to address impasse about document production. The CFTC responded by suggesting that the court appoint a receiver. In contrast, Lake Shore Limited reincorporated its arguments opposing entry of a preliminary injunction and suggested that the court vacate the portions of the injunction order (which the Seventh Circuit had declined to stay) holding that the CFTC had a strong likelihood of success on the merits of its Commodity Exchange Act claims and requiring immediate document production. The court simply cannot fathom how counsel could have believed that repetition of these previously rejected arguments objectively demonstrated his alleged desire to preserve the record with due respect for the court's rulings.

The court's rulings alerted counsel to the court's concerns about repetition of previously-rejected arguments. It is thus unclear why counsel persisted in this pattern of behavior as opposed to clarifying that he was attempting to preserve the record for appeal. It is similarly unclear why counsel (an experienced litigator) believed that the court would understand that he was repeating previously-rejected arguments in an effort to preserve those arguments when this was not reflected in his filings. The court is not a mind-reader.

The court further finds that counsel's filings regarding the mandate from the statutory injunction appeal served to multiply the proceedings as it resulted in the issuance of four opinions/orders containing a discussion based on, at best, a questionable view of events. The court appreciates that language is inherently flexible and subject to multiple interpretations, but the court's recollection of the events leading up to the filing of Lake Shore Limited's motion to enforce the mandate call counsel's current justification for his actions into question. Aggressive advocacy must have some foundation in actual events. Otherwise, as here, appellate courts will spend time reviewing hypothetical trial court records, and trial courts will spend time trying to distinguish between reality and fiction so the record does not become hopelessly confused.

The decision to wait to raise the foreign bank secrecy argument after the court issued its decision granting the CFTC's motion for a preliminary injunction is also very questionable. This did not extensively delay the proceedings only because the court set an expedited briefing schedule and ruled as quickly as possible. Counsel also stresses that only a month elapsed between the Seventh Circuit's denial of a stay in the preliminary injunction appeal and the appointment of a receiver. This is attributable to briefing schedules set by the court and the prompt issuance of a decision, however, not any actions by counsel. Indeed, during that period,

the CFTC was engaged in fruitless discovery practice and the court was facing Lake Shore Limited's standard repetitive briefs. Moreover, the rule to show cause, not any actions taken by counsel, is what stopped the seemingly endless loops of repetitious arguments.

The court also briefly touches on several instances of counsel's failure to follow well-established procedural rules. First, counsel's decision to submit evidence (Mr. Baker's declaration) directly to the appellate court without mentioning that this evidence had not been presented to the trial court is questionable, especially when viewed in context. Counsel also failed to cite to controlling Seventh Circuit authority about anti-suit injunctions and, instead, cited to out-of-circuit authority that did not track the Seventh Circuit's practice of requiring the party opposing the alleged anti-suit injunction order to provide some proof that issuance of the order will impair foreign relations. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993). In addition, counsel waited until after the court had ruled on the CFTC's motion for a preliminary injunction to raise all of Lake Shore Limited's objections to the scope of discovery proposed by the CFTC.

Adherence to rules is not an optional exercise in nitpickiness. Rules help cases proceed in an orderly fashion and ensure procedural fairness. Thus, as the Seventh Circuit has commented, "[l]awyers and litigants who decide to play by rules of their own invention will find that the game cannot be won." *See United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994). Moreover, lawyers, as officers of the court, have ethical obligations that set boundaries on their ability to submit pleadings as requested by clients. Thus, lawyers cannot allow themselves to become "handmaidens of unsavory clients who plot[] their own course of

obstructive and dilatory action." *Refco, Inc. v. Troika Investment Ltd.*, Nos. 87 C 9272 & 87 C

9585, 1989 WL 158015, at *7 n.3 (N.D. Ill. Dec. 22, 1989).

Instead, the Seventh Circuit counsels that:

> Lawyers have a unique opportunity to counsel restraint or recklessness, to craft imaginative arguments or to press empty challenges to well-settled principles. Because of our reluctance to constrain the discretion of attorneys in the vigorous advocacy of their clients' interests, we penalize them only where they have failed to maintain a minimum standard of professional responsibility. But we will not overlook such a failure when it occurs, in part because it evidences disdain for the public, whose claims lie dormant because frivolous suits have diverted away scarce judicial resources, disdain for adversaries, who must expend time and money to defend against meritless attacks, and disdain for clients, whose trust is rewarded with legal bills, dismissals, and court-imposed sanctions.

*Lepucki v. Van Wormer*, 765 F.2d 86, 87 (7th Cir. 1985) (per curiam).

The court, the parties, opposing counsel, and the public deserve the truth, a fair recitation

of applicable law, and careful adherence to procedural rules. Zealous advocacy, in other words,

can only go so far. Counsel cannot comply with the rules and fairly state the facts and the

governing law within the bounds of permissible advocacy only when it serves his client's

interests. To do so subverts the search for justice and prevents the court from efficiently and

appropriately deciding cases. *See Medtronic Navigation, Inc. v. BrainLAB Medizinische

Computersystems Gmbh*, No. 98 C 1072, 2008 WL 410413, at *1 (D.Colo. Feb. 12, 2008) ("The

fairness of the adversary system of adjudication depends upon the assumption that trial lawyers

will temper zealous advocacy of their client's cause with an objective assessment of its merit and

be candid in presenting it to the court and to opposing counsel").

The court also stresses that although it has discussed each concern separately, in reality,

counsel's actions over a period of months must be viewed as a whole. Each incident, standing

alone, would not have lead to the issuance of a rule to show cause. However, cumulatively, they could not be overlooked. This is especially true given that counsel should have been on notice that the court harbored concerns as early as August, when the court first made the highly unusual statement that counsel had engaged in a flagrant misrepresentation. *See Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, Docket No. 87. The court issued other warnings to no avail. *See, e.g., id.* at Docket No. 118, at p. 56, n.8 (noting Lake Shore Limited's pressing of factually inconsistent arguments and stating that "[t]he court feels constrained to note that this type of shift in position (which is illustrative of Lake Shore Limited's litigation strategy to date as opposed to an isolated incident) makes it difficult to rely on any factual representations made by counsel. The court does not make this comment lightly, and hopes that counsel takes it to heart").

The court also cannot ignore the fact that counsel – an experienced litigator specializing in commodities law – could and should have provided a better explanation for his positions, which were often not fairly reflected in his filings. For example, counsel repeated previously rejected arguments over and over and over without stating that he was doing so to preserve the record. As counsel notes, no specific ethical rule required him to provide this explanation (if indeed this was his motivation as opposed to an after the fact justification). Common sense, however, would have dictated that he do so. Otherwise, there is no way for the court to discern the unexpressed basis for counsel's actions, especially when that explanation is inconsistent with an objective reading of his filings.

So, are sanctions warranted? As noted above, the court has approached the issue of sanctions in this case only after a good deal of reflection. The court is in a unique position to

observe counsel's performance (in both hearings and written submissions) and assess it in light of all of the surrounding circumstances. This is not a pleasant task for anyone involved, but to ignore the problems in this case is to condone them. The court hopes that counsel appreciates why it was so profoundly dissatisfied with his defense of this case. It also trusts that counsel has engaged in reflection since the issuance of the rule to show cause and that understanding the court's perspective on his advocacy and the decisions he made throughout this litigation will prevent a similar situation from occurring again.

As noted above, the court in no way approves of the advocacy discussed in this order. Nevertheless, in an exercise of its discretion, the court finds that shining light on the litigation tactics used in this case is the most appropriate way to resolve the rule to show cause. It also finds that adding monetary or disciplinary sanctions or censuring counsel will not serve any useful purpose. The court thus declines to sanction counsel, discharges the rule to show cause, and closes out a disappointing and all too memorable chapter in the litigation of this action.

## Conclusion

For the above reasons, the rule to show cause directed at Mr. Nissen is discharged. Mr. Nissen and the other Sidley Austin lawyers representing him are granted leave to withdraw their appearances in this action.

DATE: April 1, 2007

_____
Blanche M. Manning
United States District Judge