IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, Plaintiff, | ) ) ) ) | |
| v. | ) ) | 07 C 3598 |
| LAKE SHORE ASSET MANAGEMENT LIMITED, et al., Defendants. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

The CFTC's motion for sanctions – specifically, the entry of default judgment – against Lake Shore Asset Management Limited ("Lake Shore Limited") is before the court.[1] Lake Shore Limited's ongoing disregard of the court's orders and its obligations under the Federal Rules of Civil Procedure have been detailed in numerous orders issued in this case. Lake Shore Limited has not only flouted court orders and refused to participate in discovery, but also has taken affirmative steps to hide its books and records. Indeed, its willful misconduct resulted in the issuance of substantial civil contempt sanctions (which did not prompt compliance) and a referral to the United States Attorney's Office for consideration of criminal contempt charges against it and Philip Baker, its Managing Director, Principal and President. Based on the egregious nature

---

[1] The court previously referred non-dispositive motions and discovery supervision to Magistrate Judge Mason. The CFTC's motion relates to discovery but is dispositive. Thus, although unremarked by the CFTC, Magistrate Judge Mason would have to issue a report and recommendation as to the motion, which would then be briefed further if Lake Shore Limited filed an objection. In the interests of judicial efficiency, to conserve the parties' resources, and because many of the orders that Lake Shore Limited has ignored were issued by this court, the court will rule on the CFTC's motion directly. The parties are reminded to notice any future non-dispositive motions before Magistrate Judge Mason. In preparing any future motions that are noticed to be heard by Magistrate Judge Mason, the CFTC should take 28 U.S.C. § 636 and Fed. R. Civ. P. 72 into account.

of Lake Shore Limited's actions to date, a sanction other than the entry of default judgment would not be tailored to the facts of this case. Accordingly, the CFTC's motion for entry of a default judgment is granted and Lake Shore Limited's amended answer to the CFTC's second amended complaint is stricken.

**Background**

Discovery in this case has progressed to a certain degree as the CFTC and receiver have deposed and obtained documents from non-parties. However, Lake Shore Limited has flatly refused to turn over its books and records (except very nominal documents produced at the inception of this case), respond to written discovery, or produce a corporate representative for a deposition. It has brazenly defied a distressingly high number of court orders, including this court's preliminary injunction order (Docket No. 118), the original receivership order (Docket No. 192), and the amended receivership order (Docket Nos. 552 & 554), despite the Seventh Circuit's opinion affirming, among other things, that Lake Shore Limited was required to turn over its books and records, *Lake Shore Asset Management Limited v. Commodity Futures Trading Com'n*, 511 F.3d 762 (7th Cir. 2007).

The court has issued numerous orders in this case detailing the refusal of Lake Shore Limited to comply with court orders. *See* Docket Nos. 196, 285, 299, 323, 348, 364, 389, 403; *see also* Docket No. 495 (discharging rule to show cause against Lake Shore Limited's former counsel despite his obstructionist behavior). Substantial remedial and coercive civil contempt sanctions addressing these delicts – including a fine of $25,000/day and an order barring Lake Shore Limited from using any documents that should have been produced under the injunction or receivership orders – proved fruitless. *See* Docket No. 403.

Because even a civil contempt fine of $25,000/day did not coerce compliance, the court lifted the daily fine and referred this matter to the United States Attorney for possible criminal prosecution, explaining that, "[g]iven Lake Shore Limited's affirmative attempts to hide its records and its history of self-centered actions at the expense of investors . . . a fine – no matter how high – appears to lack any meaningful coercive effect." No. 403 at 4. Even with the threat of criminal proceedings looming, Lake Shore Limited still refused to comply with the court's orders or fulfill its obligations under the discovery rules.

Lake Shore Limited also took affirmative efforts to secrete its documents and computer server in a variety of overseas locations. As the court previously stated:

> documents [obtained from authorities in Bermuda] make for compelling reading and, among other things, detail the journey of Lake Shore Limited's books, records, and computer server from Canada (where they were held by Roth Mosey [a Canadian accounting firm that acted as Fund Administrator for Lake Shore Limited]) to Bermuda and then onto Switzerland in the care of Mr. Schwab. *See* [Docket No. 379] at Ex. 4 & 6. Lake Shore Limited appears to believe that if it transfers its documents to an entity that gives the documents to another entity that then gives the documents to yet another entity that sends the documents to Mr. Schwab, Lake Shore Limited's own attorney [in Switzerland], the documents are somehow beyond its control.
>
> Courtesy of the authorities in Bermuda, the court has reviewed emails from Mr. Schwab authorizing the shipment of the Lake Shore Limited server and documents to him. *See id*. at 6, page 4 & 5; *see also* Ex. 4 at pp. 12-13 ("Lake Shore Box Delivery List" including, among other things, eighteen boxes of client files). On September 11, 2007 (the day after Lake Shore Limited learned of the Seventh Circuit's order denying Lake Shore Limited's motion for a stay of the preliminary injunction order), Mr. Schwab described the server and boxes as belonging to Pinnacle Ventures (a new Belize entity formed by Mr. Baker and staffed by Lake Shore employees, *see id*. at Ex. 1, 2 & 4) and asked the custodian to send them to him. *Id*. at Ex. 6, p. 4.
>
> Thirty-four minutes later, he emailed the custodian again and clarified that the documents and server in fact belonged to Lake Shore Limited, stating, "I am acting on behalf of Lake Shore Asset Management Ltd. and therefore confirm the request of Pinnacles [sic] Ventures to have you send to my address below the

-3-

server and all books and records of 'Lakeshore.'" *Id*. at p. 5. The documents and server were then mailed to Mr. Schwab via UPS. *See id*. at Ex. 8. No evidence suggests that the documents and server failed to reach their destination.

A lawyer is an agent of his client, so when an attorney possesses his client's business records, the client constructively possesses those records and must produce them. *See Fisher v. U.S.*, 425 U.S. 391, 403-04 (1976) ("pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client" even if the client transfers its pre-existing documents to seek legal advice); *see also Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1998 WL 293002, at *2 (N.D. Ill. May 28, 1998) (client documents held by an attorney are not shielded from production).

Lake Shore Limited has never suggested that it would have produced its documents (both paper and electronic) but was thwarted from doing so because Mr. Schwab or the custodian of the moment refused to comply with its directions to turn over its documents. To the contrary, nothing in the record even remotely supports such a theory, and all of the evidence flatly contradicts it. For example, Lake Shore Limited's brief opposing the imposition of civil contempt sanctions, its status reports post-dating the imposition of civil contempt sanctions, and its brief opposing a criminal contempt referral would have been excellent times to raise a defense of impossibility. Lake Shore Limited, however, simply reiterated its refusal to comply with the court's orders.

Moreover, even assuming hypothetically that Lake Shore Limited lacks control over its own documents now and thus cannot produce them, an alleged lack of control today does not translate into past lack of control. Anyone even remotely familiar with this case will recall that prior to the December 28, 2007, genesis of Lake Shore Limited's current and unsupported "lack of control" argument, Lake Shore Limited flatly refused to produce its documents based on arguments that had been previously rejected by this court and were recently rejected by the Seventh Circuit. It cannot go back in time and rewrite history to change its past claims that this court lacked authority to order it to produce its documents into an argument that it was always ready, willing, and able to produce its documents but was prevented from doing so by forces beyond its control.

In addition, again assuming for the moment that evidence showing that the documents and server are currently beyond Lake Shore Limited's control exists, in light of the preliminary injunction order's language, Lake Shore Limited was required to maintain control over its own documents. *See Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (the district court "may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered") (internal quotations omitted). Thus,

> even if Lake Shore Limited can produce evidence substantiating its alleged lack of control today, it cannot absolve itself from responsibility for its past actions by simply pointing a finger at someone else now.

Docket No. 389. The documents and server (as well as Philip Baker, who controls Lake Shore Limited and the related other Lake Shore entities at issue in this case) are all currently M.I.A.

Finally, after repeatedly refusing to fulfill its obligations under the rules governing discovery, Lake Shore Limited most recently defied an explicit order compelling discovery. *See* Docket No. 477. It is undisputed that Lake Shore Limited has had notice of all of the orders at issue, and also was duly served with requests for discovery by the CFTC. As outlined in the orders cited above, its counsel repeatedly acknowledged in written filings and open court that Lake Shore Limited has elected not to produce its documents or otherwise comply with court orders.[2]

---

[2] Philip Baker (Lake Shore Limited's Managing Director, Principal and President) has also twice sought – in violation of this court's orders – to have courts in London give entities he controls monies which are subject to this court's asset freeze, even though the Seventh Circuit rejected Lake Shore Limited's attempt to have Lake Shore assets unfrozen. First, he caused an action to be filed in London collaterally attacking this court's asset freeze. *See* Docket Nos. 163 & 192; *Lake Shore Asset Management Limited v. Commodity Futures Trading Com'n*, No. 07-3408 (7th Cir. Oct. 15, 2007) (unpublished order) ("initiation of litigation in other nations' courts in an effort to evade compliance is itself a form of contempt").

Second, despite Mr. Baker's refusal to be deposed as Lake Shore Limited's Rule 30(b)(6) witness, he is currently controlling litigation in the pending London interpleader action and opposing the receiver's efforts to obtain the investor assets now held by the London court and previously held by the London futures commission merchants ("FCMs"). Lake Shore Limited's counsel previously represented that the London litigation strategy is due to Mr. Baker's purported desire to protect investor funds. As this court has previously noted, this rationale is utterly incredible, given that the receiver – who is supervised by this court – seeks to distribute the funds to the investors and there can be no need to "protect" investor funds from the investors themselves. *See* Docket No. 348.

In this regard, the court notes that the CFTC's memorandum in support of its motion for a default judgment references filings by Mr. Baker in the London interpleader action. *See* CFTC

**Standard of Review**

The Seventh Circuit "has a well established policy favoring a trial on the merits over a default judgment." *Sun v. Board of Trustees of University of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007). Nevertheless, under Rule 37(b)(2), "[i]f a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery" the court may enter "such orders in regard to the failure as are just" including the ultimate sanction of rendering a default judgment. When considering the imposition of sanctions under Rule 37(b), the court must focus on whether the party against whom sanctions are sought acted willfully or in bad faith, or was otherwise at fault. *See In re Thomas Consolidated Industries, Inc. v. Herbst*, 456 F.3d 719, 724 (7th Cir. 2006); *Rice v. City of Chicago*, 333 F.3d 780, 785-86 (7th Cir. 2003) ("it is well settled in this circuit that the ultimate sanction of dismissal should be involved only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable") (internal quotations omitted).

The Seventh Circuit has recently questioned whether a default judgment based on a violation of Rule 37 must be supported by "clear and convincing evidence of willfulness, bad faith or fault" as opposed to a preponderance of the evidence. *Wade v. Soo Line R.R.*, 500 F.3d

---

Memorandum at 8. The CFTC asserts that Mr. Baker has caused pleadings to be filed asserting (despite this court and the Seventh Circuit's rulings) that U.S. courts lack jurisdiction over Lake Shore Limited and the other related Lake Shore entities. Mr. Baker thus can apparently overcome his alleged illness and participate in litigation when it suits him to do so. The court, however, declines to take judicial notice of the affidavits allegedly submitted by Mr. Baker in the London case as the CFTC did not provide the court with file-stamped (or indeed any) copies of these documents and, in any event, the CFTC has not established that the affidavits are independently admissible before this court. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) (judicial notice may be taken of filings before another court for the limited purpose of recognizing the judicial act involved or the subject matter of the litigation).

559, 564 (7th Cir. 2007), *quoting Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003); *see also Ridge Chrysler Jeep, LLC v. Daimler Chrysler Financial Services Americas LLC*, 516 F.3d 623, 625 (7th Cir. 2008) ("heightened burdens of proof do not apply in civil cases unless a statute or the Constitution so requires" and "[n]either a statute nor the Constitution requires an elevated burden for dismissal as a sanction, when the burden in the underlying suit is the preponderance of the evidence"), *citing Grogan v. Garner*, 498 U.S. 279 (1991), and *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). The court need not tarry on this issue, as Lake Shore Limited's conduct is easily egregious enough to satisfy both standards.

## Discussion

In this case, evidence of bad faith is manifest. It is hard to envision anything more extreme than the current situation, where Lake Shore Limited has flouted court orders requiring it to turn over its books and records, refused to participate in discovery, affirmatively secreted its documents, and generally done everything in its power to thwart the CFTC's attempts to engage in discovery, as well as the receiver's efforts to perform an accounting and distribute investor funds to the investors, who indisputably are the only people rightfully entitled to those funds. Lake Shore Limited has also violated numerous orders issued by this court, and flatly refused to comply with an order compelling discovery pursuant to Rule 37. Moreover, this court has held Lake Shore Limited in civil contempt and referred this case to the United States Attorney for consideration of criminal contempt charges against Lake Shore Limited and Mr. Baker. The court assumes familiarity with all of its prior orders for purposes of the CFTC's motion for entry of a default judgment.

Compliance with court orders and the Federal Rules of Civil Procedure is not optional. Moreover, Lake Shore Limited's pattern of bad-faith actions meant to defy the court, prevent the CFTC and receiver from analyzing its records, and block the investors from accessing their own money is wholly unacceptable. Quite simply, Lake Shore Limited had its chance to argue that it is not subject to jurisdiction in the United States. It did so and lost before this court and before the appellate court. It thus must either defend this action in accordance with the rules or be defaulted: it cannot refuse to participate in discovery and flout court orders, yet suffer no meaningful consequences.

At the risk of being repetitive, the court finds that Lake Shore Limited has had every chance to litigate this case properly but has consistently refused to do so. It also notes that Lake Shore Limited's litigation strategy has not been limited to mere inaction, as Lake Shore Limited has also engaged in affirmative actions that led this court and the Seventh Circuit to find that it was in contempt of court. Having elected outright defiance, its unsupported plea for the court to consider lesser sanctions to address its admitted malfeasance, such as deeming facts admitted, is rejected as the court has already imposed far more severe sanctions (including a $25,000/day coercive fine plus an award of the CFTC and the receiver's actual costs flowing from Lake Shore Limited's contumacious conduct) to no avail.

In sum, this case presents an extreme situation. Lake Shore Limited has clearly engaged in egregiously improper conduct and a series of escalating, less drastic sanctions have proven to be utterly ineffective. *See Sun v. Board of Trustees of University of Illinois*, 473 F.3d at 811. Lake Shore Limited appears to believe it is free to do as it chooses, regardless of this court's orders. It is not. Its litigation strategy has also significantly prejudiced the CFTC, the receiver,

and the investors. As the court stated when referring proceedings against Lake Shore Limited and Mr. Baker to the United States Attorney for consideration of criminal contempt charges, "Lake Shore Limited's position is clear: it will not turn over its own documents no matter what. This is unacceptable. Enough is enough." Docket No. 403 at 5. The same can be said for Lake Shore Limited's refusal to answer written discovery and produce a Rule 30(b)(6) corporate representative for deposition. Enough is enough.

Accordingly, in its discretion, the court concludes that the interests of justice would be disserved by any sanction other than the ultimate punishment of entry of a default judgment against Lake Shore Limited. A default judgment is thus entered against Lake Shore Limited. "[I]n the case of a default, this circuit follows the rule that the well-pleaded allegations of the complaint relating to liability are taken as true." *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (internal quotations omitted). The well-pleaded allegations of the complaint relating to liability are, therefore, taken as true.

The CFTC has also requested that the court enter a permanent injunction against Lake Shore Limited. *See* Docket No. 576. The injunction sought by the CFTC tracks the language of the preliminary injunction and receivership orders that are already in place in terms of the actions that Lake Shore Limited cannot take (*e.g.*, engage in activities relating to commodity interests) or must take (*e.g.*, produce its books and records, provide an accounting, and turn customer funds over to the receiver).[3]

---

[3] In contrast, the court recently entered a permanent injunction against the Lake Shore defendants other than Lake Shore Limited. *See* Docket No. 552. This injunction contained findings of fact and conclusions of law binding the Lake Shore entities in their role as defendants in this action. It thus did not duplicate orders previously entered in this case.

A permanent injunction is, obviously, not the same as a preliminary injunction. Nevertheless, the CFTC has not provided any explanation as to why entry of a permanent injunction at this juncture is appropriate when entry of such an order would not change the status quo and the case is ongoing. Moreover, the court will be able to enter more complete findings of fact at the conclusion of this action when the record is fully developed. Accordingly, the court declines to enter a permanent injunction at this time. If the CFTC wishes to pursue its request for a permanent injunction, it should formally move for this relief and address the concerns articulated in this order.

## **Conclusion**

For the above reasons, the CFTC's motion for entry of a default judgment [Docket No. 561] is granted. Accordingly, the court enters a partial default judgment against Lake Shore Limited. In addition, Lake Shore Limited's amended answer to the CFTC's second amended complaint [Docket No. 555] is stricken and the well-pleaded allegations of the complaint relating to liability against Lake Shore Limited are taken as true. The court reserves consideration of further relief to be awarded in favor of the CFTC and against Lake Shore Limited for the future (this also applies to the other Lake Shore defendants: the court has already entered a partial default judgment as to certain defendants and issued a permanent injunction directed at them,

Docket No. 552, but may, as necessary, consider the entry of further relief against them as this case is ongoing as to all parties).


DATE:  June 10, 2008
                                              _____
                                              Blanche M. Manning
                                              United States District Judge