IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, Plaintiff, | ) ) ) ) | |
| v. | ) | 07 C 3598 |
| LAKE SHORE ASSET MANAGEMENT LIMITED, et al., Defendants. | ) ) ) ) | |

### MEMORANDUM AND ORDER

The court's approval of a distribution plan and method has spawned multiple appeals (Seventh Circuit Nos. 10-1666 and 10-1915, which are pending, and 10-1967, which was dismissed) as well as additional motions presently before the court. Specifically, the receiver seeks permission to make an additional distribution due to a calculation error and also joins in a motion filed by ten families who invested in the Lake Shore funds (collectively, the "10 Families"), who ask the court to approve reclassification of certain transfers and to approve additional distributions to them.[1] For the following reasons, both motions are granted over the objection of GAMAG Black & White, Ltd. ("GAMAG").

### The Receiver's Motion for Approval to Make an Additional Distribution

On March 15, 2010, the court approved the receiver's proposed distribution plan and method to be used in calculating disbursements to investors. Dkt. 770. On March 26, 2010, the court amended the distribution order to, among other things, provide for the creation of a reserve

---

[1] The Ten Families consist of the Morini-Cobo Family, the Juan Paulo Rodriguez Family, the Duque-Villegas Family, the Oscar Lanner Family, the Freiye-Castro Family, the Vazquez-Betancur Family, the Rizo-Ospina del Pino Family, the Posada-Gomez Family, the Guevara-Villa Family and the Ciampini-Ocampo Family.

for the claim of Andorra Bank Agricol Reig S.A. (the "Andbanc Reserve") and adjust the amount of the distribution to investors in the Approved Claims Base as a result of the creation of the Andbanc Reserve. Dkt. 790.

The receiver subsequently made the authorized distributions. It then realized its professionals had made a calculation error with respect to seven investors with post-freeze deposits, explaining:

> Subsequent to completing the authorized distribution, the Receiver became aware that as to seven (7) of the investors who received a distribution which included an amount attributable to Post Freeze Deposits, a calculation error had occurred. In those seven (7) accounts, the investors had both deposits made prior to the entry of the CFTC freeze order ("Pre Freeze Deposits") and Post Freeze Deposits. The distribution schedule attached as an exhibit to the Amended Distribution Order did not segregate the Post Freeze Deposits from the Pre Freeze deposits causing the Pre Freeze Deposits to be disproportionately reduced when calculating the dollar amount to be received based on the 40.77% distribution ratio used to calculate the distribution. Attached as Exhibit A is the Receiver's spread sheet which list[s] the seven (7) accounts and a revised calculation which segregates the Pre Freeze Deposits and the Post Freeze Deposits. The total amount to be distributed to those investors to rectify the calculation error is $552,780.59.

Dkt. 815 at 2.

The receiver requests permission to distribute $552,780.59 to the seven investors, as detailed in the calculations attached to its motion. It proposes that the court authorize payment from the previously approved $1,000,000 hold back, which was to be used to pay the receivership estate's administrative fees and expenses.[2] According to the receiver, the remaining

---

[2] As detailed in the court's March 15, 2010, order approving the receiver's proposed distribution plan and method to be used in calculating disbursements to investors, even assuming the receiver does not obtain additional money, the $1,000,000 hold back is not the only remaining amount that could potentially be used to pay additional claims. *See* Dkt. 770 at 7 and 21 (hold back for administrative costs and fees and reserve for disputed disallowed claims); *see also* Dkt. 790 (additional reserve for the disputed claim of Andorra Bank Agricol Reig S.A.).

balance of the hold back ($447,219.41) will be sufficient to fund the administrative fees and expenses prior to the receipt of any additional funds which may be recovered.

GAMAG objects, based on the existence of its pending appeal (No. 10-1915) challenging the court's overruling of its objections to the distribution order. GAMAG suggests that the court should decline to rule on the receiver's motion pending the Seventh Circuit's resolution of its appeal. In essence, GAMAG's position is that the available pool of additional money is insufficient to pay the seven investors the funds they are owed, pay for the receiver's administrative fees and costs, and pay the additional money GAMAG would receive if it were to prevail on appeal. GAMAG does not, however, challenge the seven investors' right to receive an additional distribution or the receiver's revised calculations with respect to the seven investors.

GAMAG did not ask the court to create a reserve for its claim, perhaps based on the existence of the $1,000,000 hold back or the disputed claim reserve. There is no way to know at this point if the receivership estate will receive additional funds, whether via the Bank of New York/Sentinel proceedings or otherwise. Regardless, as the receiver notes, "[i]f anyone is at risk, it is the Receiver and his professionals." Dkt. 828 at 2.

The court agrees with the receiver that its error should not be used to prejudice the seven investors. GAMAG has already received a distribution using the method approved by the court. Moreover, the court has already rejected GAMAG's position that its claims take precedence over other investors' claims. If GAMAG prevails on appeal, the court will conduct additional proceedings to ensure that it is made whole to the extent possible. Nevertheless, the court finds that the seven investors are entitled to receive a distribution now using the method approved by the court. Accordingly, GAMAG's objections are overruled.

## The Ten Families' Motion to Approve
## Reclassification and Approve Additional Distributions

Jose Fernando Hurtado was the Lake Shore common enterprise's sales representative for the Colombian region. The Ten Families authorized Mr. Hurtado to retain counsel on their behalf so they could ask the court to reclassify certain intra-family account transfers. They contend that the transfers should not have been treated as withdrawals. If they are correct, they are entitled to an additional distribution totaling $236,022.98.

The Ten Families brought the classification issue to the receiver's attention shortly after the receiver filed its motion for approval of its proposed distribution method. According to the Ten Families, the receiver decided to bring the intra-family transfer issue to the court's attention after the court ruled on the distribution method, as the classification issue only mattered if the court adopted the rising tide method. The court did so, leading to the filing of the Ten Families' motion. If there are any future disputes regarding distributions, the receiver and investors shall promptly advise the court so it is aware of the full picture as soon as possible.

Getting back to the intra-family transfer/withdrawal issue, the Ten Families assert that they made certain intra-family transfers, but stress that their net investments remained the same. If the intra-family transfers are treated like withdrawals, the Ten Families receive less money under the rising tide method but the same amount under the net investment method.

The example provided by the Ten Families illustrates the problem:

**Scenario 1: Two Family Accounts with $50,000 and No Intra-Family Transfer**

|  | **Family Account 1** | **Family Account 2** |  |
|---|---|---|---|
| Beginning Balance | $50,000.00 | $50,000.00 | **Total** |
| Distribution under Rising Tide | $20,000.00 | $20,000.00 | $40,000.00 |
| Distribution under Net Investment | $20,000.00 | $20,000.00 | $40,000.00 |

**Scenario 2: Two Family Accounts with $50,000, $30,000.00 Intra-Family Transfer**

|  | Family Account 1 | Family Account 2 |  |
|---|---|---|---|
| Beginning | $50,000.00 | $50,000.00 |  |
| Transfer $30,000.00 from 1 to 2 | -$30,000.00 | $30,000.00 |  |
| Balance | $20,000.00 | $80,000.00 | **Total** |
| Distribution under Rising Tide | $0[3] | $32,000.00 | $32,000.00 |
| Distribution under Net Investment | $8,000.00 | $32,000.00 | $40,000.00 |

Dkt. 817 at 3.

After considering the Ten Families' position, the receiver filed a motion to join the Ten Families' motion. The receiver's position is that the Ten Families' intra-family transfers should not be classified as withdrawals. If the court agrees, the Ten Families would be entitled to an additional distribution. As with the receiver's motion to make an additional distribution to correct the calculation error, GAMAG does not disagree with the analysis or calculations made by the Ten Families or the receiver. GAMAG nevertheless asks the court to stay consideration of the Ten Families' motion until its appeal is over, asserting that the distribution authorized by the court that is currently on appeal caused it to be shorted and that giving the Ten Families more money might cause it to be left out in the cold.

The court's comments about GAMAG's arguments made in connection with the calculation problem apply equally to the situation with the Ten Families. GAMAG has not directed the court's attention to any authority suggesting that the intra-family transfers should be treated like withdrawals. GAMAG simply wants to call dibs on the money remaining in the $1,000,000 hold back (and possibly other withheld funds) so that it will be guaranteed to be made whole at the expense of the Ten Families should it prevail on appeal.

---

[3] Under the "rising tide" method, if the $30,000 is treated as a withdrawal, the potential distribution of $20,000*.4 or $8,000 is less than the $30,000 already "withdrawn" and therefore, no additional distribution is made.

Hindsight is 20/20 vision, and clearly GAMAG would have been well served to ask the court to create a reserve (as Andbanc did) before the court authorized the first wave of distributions. However, it neither requested a reserve nor moved for a stay of the distribution order pending appeal. It thus is not entitled to subordinate the claims of other investors who did not receive their fair share of the initial distribution to its claim for an additional distribution.

Accordingly, the court, in its discretion, finds that the Ten Families are entitled to an additional distribution as detailed in Exhibit B to the Ten Families' Motion. *See* Dkt. 817. With respect to GAMAG, the chips will have to fall as they may. The amount of additional available money is subject to change depending on a variety of events that might occur in the future, and the court will have to sort out any competing claims to those funds once the Seventh Circuit rules on the pending appeals filed by GAMAG and Andbanc.

**<u>Conclusion</u>**

For the above reasons, the receiver's motion for approval to make an additional distribution [#815] is granted over GAMAG's objection. In addition, the receiver's motion to join the Ten Families' motion to approve reclassification and to approve additional distributions [#825] is granted. Finally, the Ten Families' motion to approve reclassification and to approve additional distributions is granted over GAMAG's objections. The receiver shall make the additional distributions authorized by this order within fourteen days after the date that this order is entered on the docket.

DATE: June 30, 2010

                                                    */s/ Blanche M. Manning*
Blanche M. Manning
United States District Judge