**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES COMMODITY** | ) | |
| **FUTURES TRADING COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **07 C 3598** |
| | ) | |
| **LAKE SHORE ASSET MANAGEMENT** | ) | |
| **LIMITED, et al.,** | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

At the inception of this commodities fraud case in 2007, defendant Philip Baker, the head

of multiple intertwined Lake Shore entities, attempted to explain the discrepancy between the

amount of money in the Lake Shore pools and the claimed amount under management by

asserting that an entity known as "FTG" held the missing funds. Today, the receiver's motion

seeking to expand the receivership to include FTG Capital Canada, Ltd. is before the court. For

the following reasons, the motion is denied without prejudice.

**I.      Background**

The court assumes familiarity with the orders entered in this 2007 commodities fraud case

and thus will briefly highlight relevant facts. Robb Evans & Associates, LLC, is the temporary

equity receiver for the Lake Shore Common Enterprise. Pursuant to an international letter

rogatory issued by this court and an order issued by the Ontario Superior Court of Justice,  the

receiver conducted discovery in Canada. Among other things, the receiver deposed John Kurgan

(FTG's sole officer) and David Tonken (FTG's accountant), interviewed Nicholas Eveleigh (an

individual who withdrew money from FTG accounts whose name has come up in prior filings

discussing other Lake Shore entities) by telephone, and submitted written interrogatories to

Patricia Kurgan (John Kurgan's wife, and FTG's sole shareholder).

### A.    Receiver's Version

The receiver pursued written discovery in Canada.  Among other things, the receiver

sought documents from FTG, including "all records of any funds received from Hanford

Investments Ltd., Lake Shore Asset Management Inc., Lake Shore Asset Management Ltd.,

Anglo International Associates Ltd., Man Financial n/k/a MF Global UK Ltd., Lehman Brothers

International (Europe), or Fimat."

The receiver contends that the Canadian discovery established that FTG conducted

transactions on behalf of the Lake Shore Group of Companies ("Lake Shore").  The receiver also

asserts that FTG was a member of the group of entities forming the Lake Shore common

enterprise, as defined in the amended receivership order, Dkt. 554.  Additionally, the receiver

states that Lake Shore entities sent funds to FTG and FTG operated as the predecessor to Lake

Shore Asset Management, Ltd. ("LSAM"), which was a key part of the Lake Shore common

enterprise.

In support, the receiver points to evidence indicating that while FTG's bank accounts

were closed in July 2007, between 2002 and 2006, FTG transferred millions of dollars between

itself and various Lake Shore entities and their officers, employees, legal agents, and other

service providers.  The receiver argues that this shows that during this time period, FTG shared

common control with Lake Shore and functioned as Lake Shore's administrative arm.

The receiver further supports its version of events with a declaration from Philip Baker.

In his declaration, Mr. Baker states that he formed FTG with Mr. Kurgan, that FTG was LSAM's

predecessor, and that FTG was used to support Lake Shore's business activities. According to the receiver, Mr. Kurgan allowed Mr. Baker to siphon millions of dollars in investor funds from the Lake Shore accounts, via FTG, in the form of unearned commission fees and so-called loans.

The receiver thus concludes that FTG was LSAM's predecessor and operated as part of the Lake Shore common enterprise. The receiver suggests that FTG should be treated just like the other members of the Lake Shore common enterprise (all of whom are defendants in this action) and seeks to exercise control over FTG's assets to the extent necessary to recover customer funds, including money paid to FTG by defendants Hanford and Anglo, who are part of the Lake Shore common enterprise and thus are already subject to the receivership.[1]

## B. FTG's Version

FTG denies that it is connected to any Lake Shore entities or misappropriated any Lake Shore investor funds. John Kurgan contends that he formed FTG to develop a guide to trading that would help him obtain business. He asserts that he made his wife FTG's sole shareholder and arranged to have all of the Kurgan family's assets held in her name because his profession of

---

[1] This court originally found that members of the Lake Shore common enterprise other than LSAM could properly be the subject of orders affecting those members' assets because the members were alter egos of LSAM. *See United States Commodity Futures Trading Comm'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, 2007 WL 2659990, at *24-25 (N.D. Ill. Aug. 28, 2007) (Dkt. 118, granting preliminary injunction). The Seventh Circuit, however, reversed that portion of the court's ruling and held that the members could only be directly ordered to take certain actions if they were first served with process. *United States Commodity Futures Trading Comm'n v. Lake Shore Asset Management Ltd.*, 511 F.3d 762 (7th Cir. 2007) (distinguishing between orders specifically directed at a nonparty and orders binding a nonparty under Fed. R. Civ. P. (d)(2) because it is acting in "active concert or participation" with a party). Thus, the CFTC filed an amended complaint adding the members as defendants. Ultimately, default judgments were entered against all of the defendants.

commodity trading is a volatile, high risk business. Based on the evidence presently before the court, however, FTG did not develop a trading guide or engage in any trading.

Mrs. Kurgan confirmed that she is FTG's sole shareholder, that her husband formed FTG, and that she did not actively manage the company, operate it as an ongoing business, or participate in its business affairs in any way. Mr. Kurgan had signatory authority over the FTG bank accounts but later authorized Nicholas Eveleigh to direct payments from the accounts. Mrs. Kurgan asserts that she was completely uninvolved with FTG.

Mrs. Kurgan also owns a company called 162663 Ontario, Ltd. This company owns the Kurgans' country house, which it purchased with funds from Zumer Investments, a Turks and Caicos company owned by Mr. Kurgan. According to the Kurgans, the money used by Zumer to purchase the house was paid to Mr. Kurgan as compensation for trading and was not connected to either Hanford or any of the Lake Shore companies.

The FTG bank records produced by Mr. Kurgan, including invoices submitted by Roth Mosey LLP (LSAM's third party administrator), show that FTG initially paid LSAM's expenses. At his deposition, Mr. Tonken (FTG's accountant) confirmed that FTG paid LSAM's expenses. However, after LSAM began using Anglo International Associates Ltd. (a London payroll services company) in April of 2006, Anglo started paying LSAM's administrative expenses and sales commissions.

Mr. Kurgan asserts that after FTG was formed, he met Mr. Baker who, at that point, had fallen on hard times. Mr. Kurgan loaned money to Mr. Baker and signed a partnership agreement, allegedly so Mr. Baker could prove to his father that he was employed. Mr. Kurgan

denies that he ever worked with Mr. Baker, but admits that he executed trades with Refco Canada for Mr. Baker.

Mr. Kurgan also admits that he helped establish Hanford (a defendant in this action which is part of the Lake Shore common enterprise) by signing documents so Hanford could open bank and trading accounts as Mr. Baker's poor credit rating made him ineligible to do so. However, Mr. Kurgan denies that he owned or controlled Hanford. Mr. Kurgan allowed Mr. Baker to use FTG to pay administrative expenses in Canada for the Lake Shore companies. Mr. Kurgan asserts, however, that Mr. Eveleigh was responsible for handling FTG's banking activities and finances.

## II.     Discussion

The court has broad powers to determine what relief is appropriate in an equity receivership. *See United States Commodity Futures Trading Com'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, 2007 WL 2915647, at *16 (N.D. Ill. Oct. 4, 2007) (Dkt. 196); *see also Securities & Exch. Com'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

The parties' versions of the facts differ because, as noted above, they disagree as to whether FTG was independent or yet another Lake Shore entity that was part of the Lake Shore common enterprise. FTG asserts that the receiver's motion to expand the receivership to include it should be denied because: (1) FTG is not named as a defendant, and the receiver is seeking to take over FTG as opposed to acquire receivership assets allegedly in its possession; and (2) the court lacks personal jurisdiction over FTG because FTG had no jurisdictional contacts with the United States.

The receiver, on the other hand, relies on the amended receivership order, which directs the receiver to collect and take control of all assets owned by the Lake Shore common enterprise held for the benefit of Lake Shore clients wherever they are situated. Dkt. 558. It then contends that its request to expand the receivership to include FTG does not constitute a new cause of action against a nonparty. In support, it argues that "FTG was not only a predecessor to Lake Shore, but also assisted in the furtherance of the Lake Shore Common Enterprise fraud. Nevertheless, the [r]eceiver is not proceeding against FTG as a defendant or coconspirator in the fraud. Instead, the receiver is simply seeking to recover customer funds that were wrongfully paid to it through Hanford and Anglo, two of the other [r]eceivership defendants." Dkt. 871 at 2. The receiver also asserts that it should be able to take over FTG and use FTG's funds to benefit the defrauded Lake Shore investors because FTG was inextricably intertwined with Mr. Baker and Lake Shore from 1999 to 2006. Elsewhere in its memoranda, the receiver contends that the receivership should be expanded to include FTG because FTG was LSAM's predecessor and was operated as part of the Lake Shore common enterprise and thus was a Lake Shore alter ego or affiliate.

The court's analysis of the receiver's motion begins and ends with the receiver's alter ego argument, which is premised on the contention that the court can issue an order directed at FTG even if FTG is not a party. The court previously reached a conclusion consistent with this position and held that entities that called themselves by other names but were, in fact, LSAM's alter egos were inseparable from LSAM. As such, the court found that LSAM and all of the other numerous alter ego Lake Shore entities, including an LSAM predecessor, were all the same entity so proceedings against LSAM could properly include the alter egos even if they were not

named as parties. *See United States Commodity Futures Trading Comm'n v. Lake Shore Asset Management Ltd.*, No. 07 C 3598, 2007 WL 2659990, at *24-25 (N.D. Ill. Aug. 28, 2007) (Dkt. 118, granting preliminary injunction), *rev'd in part by* 511 F.3d 762 (7th Cir. 2007).

The Seventh Circuit, however, disagreed. Specifically, the Seventh Circuit held that:

[U]nder Fed.R.Civ.P. 65(d) an injunction against Lake Shore Asset Management, Ltd., binds all those acting in concert with it – which means other members of the corporate group. But it does not follow that a litigant's affiliates may be named in an injunction. The only defendant in the CFTC's suit is Lake Shore Asset Management, which must be the sole addressee of the injunction. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110-11 (1969). The injunction may direct Lake Shore to do things within its power – such as turning over its books and records – but may not impose obligations directly on other members of the corporate group.

Any of Lake Shore's affiliates is bound, to be sure, by an injunction against Lake Shore, but a district court must not direct Lake Shore to do things that only some other member of the group, not named as a defendant, could perform. And whether a particular person or firm is among the "parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with" them (see Fed.R.Civ.P. 65(d)(2)(B), (C)) is a decision that may be made only after the person in question is given notice and an opportunity to be heard. (This language comes from the version of Rule 65 that became effective on December 1, 2007; the language quoted in our order of October 15 is from the version of Rule 65(d) that was then current. There is no substantive difference.)

The district judge evidently was confident that other members of the Lake Shore Group of Companies are "in active concert or participation with" Lake Shore Asset Management, and that may well be true. But so far none of these other entities has been served with process and given an opportunity to present evidence. That is essential before any enforcement action may be taken against a non-litigant. *Zenith Radio* held that even a defendant's concession that some additional entity is the defendant's alter ego does not warrant an injunction against that entity, until it has been served with process and offered the opportunity to say whether it agrees with the original defendant's concession. *See also, e.g., Chase National Bank v. Norwalk*, 291 U.S. 431, 436-37 (1934); *Scott v. Donald*, 165 U.S. 107, 117 (1897).

The injunction that the district court entered imposes obligations on "Lake Shore [Asset Management] Limited, individually and as part of the Lake Shore

common enterprise". The phrase "individually and as part of the Lake Shore common enterprise" must be deleted wherever it occurs in the injunction, so that the order's only addressee is Lake Shore Asset Management, the sole defendant. Rule 65(d)(2) specifies who other than Lake Shore must comply, and before any person or entity is deemed to be "in active concert or participation with" Lake Shore, notice and an opportunity for a hearing must be provided.  Of course, other members of the Lake Shore Group of Companies act at their peril if they disregard the commands of the injunction, for, if the district court ultimately determines that they are in concert with Lake Shore, then they will be in contempt of court.  But that is an issue for another day, if any additional member of the group (or any of the entities' officers) should be named as a party.  *See In re Teknek, LLC*, No. 07-1498, 512 F.3d 343, 2007 WL 4553650 (7th Cir. Dec. 28, 2007).

　　　　The petition to review the CFTC's order is dismissed for want of jurisdiction. The judgment of the district court is affirmed to the extent it concerns Lake Shore Asset Management (and is within its power to perform) but is vacated to the extent the injunction imposes duties on other entities, and the case is remanded for proceedings consistent with this opinion.

511 F.3d at 766-67.[2]

　　　　To resolve the receiver's motion to expand the receivership to include FTG, the court need not determine whether FTG is, in fact, an alter ego of LSAM (and indeed, cannot do so without an evidentiary hearing given the competing written evidence before it).  This is because even if FTG is yet another one of LSAM's many alter egos, it would not affect the disposition of the receiver's motion given the Seventh Circuit's ruling that an entity which allegedly is "in active concert or participation with" LSAM must be "served with process *and* given an

---

[2] The receiver asserts that FTG is a predecessor of LSAM.  This court previously found that the Lake Shore common enterprise included Lake Shore, Inc., another predecessor of LSAM. *See United States Commodity Futures Trading Comm'n v. Lake Shore Asset Management Ltd.*, 2007 WL  2659990, at *2-3, 9-11 & 21-25; *see also* Dkt. 194 (order appointing receiver and defining the Lake Shore common enterprise); Dkt. 554 (amended receivership order).  In its opinion addressing this court's preliminary injunction order, the Seventh Circuit did not distinguish between predecessors and other alter egos.  Thus, this court will also not consider whether the allegation that FTG is a predecessor means it should potentially be treated differently from non-predecessor alter egos.

opportunity to present evidence . . . . before any enforcement action may be taken against [that] non-litigant." *Id*. at 767 (emphasis added) ("*Zenith Radio* held that even a defendant's concession that some additional entity is the defendant's alter ego does not warrant an injunction against that entity, until it has been served with process and offered the opportunity to say whether it agrees with the original defendant's concession").

In other words, a district court may not issue an order specifically directed at an alleged alter ego unless that party is first named as a defendant and served with process. *Id*. at 766-67. Indeed, as noted above, this court previously issued an order granting relief against a group of nonparty LSAM alter egos which had actual notice of the litigation and an opportunity to defend, and the Seventh Circuit reversed because those alter egos had not been named as defendants and served with process. *See United States Commodity Futures Trading Comm'n v. Lake Shore Asset Management Ltd.*, 511 F.3d 762 at 766-67 (noting that the district court's findings that nonparties were alter egos of LSAM "may well be true" but holding that an order directing the nonparties to cede control of their assets was premature because the nonparties had not been served with process).

In contrast, orders may indirectly bind nonparties by allowing them to be held in contempt if the nonparties have actual notice of the orders and are "officers, agents, servants, employees, and attorneys" of a party or "in active concert or participation" with a party or its officers, agents, servants, employees, or attorneys. *See* Fed. R. Civ. P. 65(d)(2). For example, in *National Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. National Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837 (7th Cir. 2010), a religious organization brought a civil contempt proceeding against five nonparty religious organizations and individuals

allegedly associated with a religious group that had been enjoined from using the plaintiff's name. The Seventh Circuit held that "a nonparty may properly be held in contempt for violating an injunction if the court acquires jurisdiction over the nonparty and gives the nonparty an opportunity to contest whether he is bound by the injunction and is in fact in contempt." *Id*. at 853, *citing Zenith Radio*, 395 U.S. at 112.

To illustrate, assume entities X and Y are part of a common enterprise and X is an officer, agent, servant, employee, or attorney of Y or is acting in active concert or participation with Y. In this scenario, it is important to distinguish between (1) an order finding nonparty X in contempt of an order requiring party Y to give up control of Y's assets and (2) an order requiring nonparty X to give up control of X's own assets. The former is proper, but the latter is not.

Here, the receiver seeks an order finding that FTG is an alter ego of LSAM and adding FTG into the receivership estate so FTG's assets may be distributed to the defrauded Lake Shore investors.[3] This request is premised on the receiver's belief that FTG is part of the Lake Shore common enterprise and as such, can be directly subject to a court order requiring it to give up control of its assets. As discussed above, the Seventh Circuit has held that an alleged alter ego who is not a party must be served with process before being the subject of an order specifically directed at it. *See United States Commodity Futures Trading Comm'n v. Lake Shore Asset*

---

[3] The receiver, for reasons unknown to the court, does not appear to have sought to have FTG added as a defendant in this action. *Cf. Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (receiver filed ancillary complaint against non-parties to SEC case to recover property pursuant to fraudulent transfer laws because "[l]ike a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit"); *S.E.C. v. Antar*, 831 F.Supp. 380, 401-02 (D.N.J. 1993) (SEC properly named defendant's relatives as additional defendants before it litigated whether the relatives' property should be included in the receivership estate).

*Management Ltd.*, 511 F.3d 762 at 766-67; *see also S.E.C. v. Kirkland*, No. 6:06CV 183 ORL

28KRS, 2006 WL 3388463, at *2-3 (M.D. Fla. Nov. 21, 2006) (denying receiver's request to

include nonparty's home in the receivership estate because the nonparty was not named as a

defendant, there had been no finding that the nonparty acted in active concert or participation

with the defendant, and the court could not exercise *in rem* jurisdiction over the property).[4]  This

appellate ruling is generally binding on this court as well as the law of this specific case.

While FTG has been afforded an opportunity to submit evidence and has done so under

protest, it clearly has not waived the service of process requirement.  The parties' arguments

about whether FTG is one of LSAM's alter egos and whether this court may exercise personal

jurisdiction over FTG are thus premature.  However, in the interests of completeness, the court

notes these questions turn on facts that must be determined after an evidentiary hearing.

Accordingly, the court appreciates the receiver's efforts to obtain funds for the defrauded

investors.  Nevertheless, the Seventh Circuit has found that Lake Shore alter egos must be

formally named as defendants and served before being subject to this court's direct orders

regarding their assets.  Even assuming that nonparty FTG is an alter ego of LSAM (an issue upon

which the court expresses no views) and part of the Lake Shore common enterprise, the court

thus cannot accept the receiver's contention that it is proper to expand the receivership to include

FTG without naming it as a defendant and serving it with process.  The receiver's motion for

------

[4]  The court notes that it located a case where a receiver sought to add a nonparty's assets into the receivership estate and the court held that the nonparty's assets could be included in the receivership estate if the exercise of personal jurisdiction over the nonparty was proper.  *S.E.C. v. Private Equity Management Group, Inc.*, No. CV 09-2901 PSG (EX), 2009 WL 3074604, *5-6 (C.D. Cal. Sept. 21, 2009).  The court declines to follow the *Private Equity* decision as it is at odds with Seventh Circuit and Supreme Court precedent, as detailed in the text.

entry of an order expanding the receivership to include FTG is, therefore, denied without prejudice.

**III.    Conclusion**

For the above reasons, the receiver's motion for entry of an order expanding the receivership to include FTG Capital Canada, Ltd. [853] is denied without prejudice.  Thus, FTG's motion for leave to file to move to strike portions of the receiver's reply, take discovery to respond to the receiver's alter ego allegations, and submit a sur-reply [873] is denied as moot.

DATE: August 19, 2011

Blanche M. Manning
United States District Judge